8   173
15    18

UNITED STATES, RESPONDENT, *v.* MARCUS B. BUFORD AND OTHERS, APPELLANTS.

[See *Taylor* v. *Buford, ante.*]

CRIMINAL LAW.—FENCING PUBLIC LANDS.—Where appellants had erected a fence entirely upon their own lands, which fence enclosed a portion of the public lands of the United States; *held* that they had committed the offense of unlawfully enclosing the public lands.

ID.—ID.—INTENT.—The intent which the law requires as necessary to the commission of an offense, is the intent to commit the act, which is defined as illegal and punishable, but not the having of an evil purpose to commit a crime.

APPEAL from a judgment of the district court of the first district. The opinion states the facts.

*Messrs. Evans and Rogers,* for the appellants.

Cited *United States* v. *Douglas Willan-Sartoris Co.,* 22 Pac. Rep. 92.

*Mr. Charles S. Varian,* U. S. District Attorney, for the respondent.

BLACKBURN, J.:

The appellants were convicted on an indictment charging them with fencing in the public lands contrary to the statute of the United States. A motion was made for a new trial, the motion overruled, and the defendants appeal. The statute of the United States is as follows: "That all inclosures of any public lands of any territory of the United States heretofore or hereafter made by any person, to any of which land included within

the inclosure the person making or controlling such inclos-
ure had no right or color of title, made or acquired in
good faith, or an asserted right thereto by or under claim
made in good faith, with a view to entry thereof, at the
proper land office, under the general laws of the United
States, at the time such inclosure was or shall be made,
are hereby declared to be unlawful, and the maintenance,
construction, or control of any such inclosure is hereby
forbidden and prohibited, and the assertion of a right to
the exclusive use and occupancy of any part of the public
lands of the United States, without claim, color of title,
or asserted right, as above specified, as to inclosure, is
likewise declared unlawful, and hereby prohibited." 23
St. at Large, p. 321. The indictment charges the viola-
tion of this section by inclosing eight sections of public
lands; also a violation of § 3, which prohibits the
obstructing free passage or transit over public lands. The
case was submitted to the jury on an agreed statement,
as follows: "(1) That defendants constructed and main-
tained the fence mentioned in the indictment; that it
inclosed sections 8 and 26 in township 11, sections 32 and
26 in township 12, and section 36 in township 13, all in
range 5. (2) That the lands were public lands subject
to entry under the land laws of the United States, and
that no lawful filing had been attached or entry made.
(3) That the fence was constructed, etc., wholly on lands
owned and possessed by defendants, being the alternate
and odd-numbered sections granted the Central Pacific
Railroad Company of California by certain acts of Con-
gress, and even-numbered sections, as to which entries
were filed in behalf of defendants and licensees prior to
the building of the fence, which during the times men-
tioned in the indictment were in force and effect." There
was no other evidence submitted to the jury. The defend-
ants moved the court to instruct the jury to find a ver-
dict of acquittal. The court refused, and defendants

excepted.   And thereupon the court instructed the jury, among other things, "that if they believed, beyond a reasonable doubt, that the facts as admitted were true, and that the offense charged was established by the admissions, and that the defendants constructed and maintained the fence with an unlawful purpose and intent to inclose the land of the United States, and, at the time of such inclosure, they had no claim or color of title made or acquired in good faith thereto, or an asserted right thereto, by or under any claim made in good faith, with a view to entry thereon under the laws of the United States, they should find the defendants guilty." The court further instructed the jury that the fact, if shown, that the defendants built the fence on their own land, would not justify them in doing so, provided such fence and inclosure was so constructed by them as to purposely, intentionally, and exclusively inclose the government land in the same inclosure for their exclusive use, and that it was so constructed as to exclude others from going upon and passing over the inclosed government land, and to impede the government from selling and disposing of the same, and to prevent local settlement under the laws of the United States." These instructions were duly excepted to by the defendants.

It will be seen by a very cursory view that these instructions are more favorable to the defendants than the rules of criminal law justify, except in the particular hereafter mentioned; for it is not necessary for a man to have an evil purpose to commit a crime. It is only necessary for him to intentionally do the act that the law declares to be a crime. His motive and purpose do not constitute an element of the crime. Therefore the only contention of the defendants that need be noticed is that they had a right to inclose the public lands of the United States, if in so doing the inclosure was entirely constructed on their own land. The government granted to

the railroad company the alternate sections in certain townships along the line of its road; and the defendants claim, by running their fence on these alternate sections, they incidentally inclose the other sections of the township reserved to the United States. When the government of the United States grants land from the public domain, it makes the grant simply as a land proprietor, and retains the same rights or privileges which a private individual would retain under like circumstances. *Aldrich* v. *Aldrich,* 37 Ill. 32; *Rogers* v. *Brent,* 5 Gilman, 573. To this, perhaps, there is the exception that all government grants are construed most strongly against the grantee. LAWRENCE, J., in a dissenting opinion in the case of *Crear* v. *Crossly,* 40 Ill. 178, thus states the common law on the subject of like grants: "If the government, after making a grant, owns all the surrounding lands, the grantee takes a right of way over the surrounding land to the public highway, as an incident to his grant; and if the government retains the title to a tract of land, having sold the land surrounding it on every side, a right of way to a public road is reserved by implication. This right of way continues in both cases, both in favor of and against subsequent grantees; for it is a right created by operation of law, and from necessity, to enable owners to enjoy their lands." This doctrine of the common law is so well understood that the numerous authorities in its support need not be cited. At the time this grant was made to the railroad company, the law authorized the citizens to acquire title to separate quarter sections of the public lands. So that, in order to allow the disposition of the alternate sections, the government reserved the right to the free access of the public to each quarter section of the reserved sections. So that, whether there was a statute against inclosing the public lands, or not, the owners of these railroad lands would have no right to inclose their lands so as to exclude the public

from free access thereto. When, therefore, Congress passed a law making it unlawful and penal to inclose the public lands, it included these alternate reserved sections, as well as other public lands. If the grantees of these railroad lands inclosed public lands so as to prevent the public from entering upon them for settlement, or other lawful purpose, even if done by placing the fence that constitutes the inclosure all on their own lands, they violate the law, and should be held guilty; for they have no right to exclude the public from the public lands at all, in any way whatever. If the contention of appellants be maintained, it results that the railroad company and its grantees may inclose large bodies of the public lands, and prevent their use by the public, and entirely prevent their settlement. It cannot be supposed for a moment that Congress, in granting alternate sections of land to the railroad company, included by implication a grant to it to inclose, and prevent the settlement of, all the alternate reserved sections. We think the judgment ought to be affirmed.

ZANE, C. J., and ANDERSON, J., concurred.