## HECHT v. HARRISON.

JUDGMENT—APPEAL AND ERROR.

1. A judgment will not be reversed where, upon the evidence the appealing party would be entitled to only nominal damages, and the matter of costs is not involved, and where no rights of the plaintiff in error need to be vindicated or are imperiled.

[Commenced in District Court February 13, 1891. Decided May 11, 1895.]

Suit for damages for unlawfully moving cattle from a certain locality largely enclosed, and containing unappropriated public land. As the decision of the court was based upon the determination that the plaintiff in error would only be entitled to nominal damages upon the evidence in the case, the facts are sufficiently stated in the opinion.

*T. F. Burke,* for plaintiff in error.

If the land was enclosed, the act of enclosure was wrongful, including large tracts of public land to the grasses upon which the plaintiff had the same right as defendant. (Act. of Cong., Feb., 1885.) The conclusion reached in the case of U. S. v. Douglas-W. Sar. Co., 3 Wyo., 288, is not sound. (U. S. v. Brighton R. Co., 25 Fed., 465; U. S. v. Cleveland C. Co., 33 id., 323; U. S. v. Camfield, 59 id., 562; U. S. v. Brighton R. Co., 26 id., 218; U. S. v. Buford, 8 Utah, 173; Kitts v. Austin, 83 Cal., 167.) The plaintiff had a right to graze his cattle

upon the public lands in the locality from which they were driven. (Buford v. Houtz, 133 U. S., 320; Kerwacker v. Cleveland, &c., R. R. Co., 3 O. St., 172; Delaney v. Ericson, 10 Neb., 492; id., 11 Neb., 532; Logan v. Gedney, 38 Cal., 579; Seeley v. Peters, 5 Gilm., 130; Morris v. Fraker, 5 Colo., 425.)

*Lacey & Van Devanter,* for defendant in error.

The appellate court will not disturb a finding of fact based upon conflicting evidence. (Bank v. Dayton, 1 Wyo., 336; Byrne v. Myers, id., 352; W. U. T. Co. v. Monseau, id., 17; Fein v. Tonn, 2 id., 113; Boberg v. Prahl, 3 id., 325; O'Brien v. Foglesong, id., 57; Ketchum v. Davis, id., 164.) Defendants, having actual possession of all the lands in question, could exclude all persons therefrom except only the proprietor of the soil. (Sheldon v. Mull, 67 Cal., 229; Dyson v. Bradshaw, 23 id., 528; Goodwin v. McCabe, 75 id., 584; Atherton v. Fowler, 96 U. S., 513.) The question of right to possession cannot be tried in an action of trespass for driving away cattle. The trial court found that no injury resulted to plaintiff. A denial of nominal damages does not affect substantial rights. (Elliott App. Pro., sec. 636; Bacon's Abridg. Title Trial, L.—; Jennings v. Loring, 5 Ind., 250; State v. Miller, 5 Blackf., 581; Smith v. Weed, S. M. Co., 26 O. St., 562; Hibbard v. W. U. T. Co., 33 Wis., 558; Haven v. Beidler Mfg. Co., 40 Mich., 286.)

GROESBECK, CHIEF JUSTICE.

The action was brought in the district court for Albany county by the plaintiff in error, who was plaintiff below, against Robert Marsh, Arthur Francis, Thomas Cooper, and Frank O. Harrison. Cooper and Marsh were sued as members of a co-partnership, but it appeared on trial that defendant. Marsh had disposed of his interest in the co-partnership, and it was dissolved before the commission of the alleged trespass, and Cooper was not served with process and did not appear.

As Marsh did not participate in the act complained of in the petition, he was not joined as defendant in error, and it is sought here to reverse the judgment in favor of Harrison. The suit was in the nature of an action in trespass to personal

property, and damages in the sum of $16,950.00 were demanded in the petition, for the driving by defendants of plaintiff's cattle from their usual and lawful range, in what is known as Coal Bank Hollow, in the county of Albany, in this State. Plaintiff claimed damages for the expense of hiring men and horses to recover his cattle, and for the loss and depreciation in value of his cattle, resulting from the alleged unlawful and injurious acts of the defendants in driving them from their range. Harrison answered by pleading a general denial, and special matter by way of justification, alleging that one Cooper was lawfully possessed of a certain close, and that Harrison, as his servant, having ascertained that certain cattle had, by some person unknown to him, been driven into said close, caused the cattle to be driven therefrom, gently and with great care, and that this act was done under the authority and direction of Cooper, and was the alleged trespass set forth in the petition. Defendant Marsh pleaded a general denial. Hecht replied to the separate answer of Harrison, denying specifically the special matter of justification set up as a defense. Upon these pleadings the cause went to trial, and the evidence adduced is incorporated in the bill of exceptions.

The trial court found for the defendants served, and made specific findings of fact and conclusions of law. Briefly stated, these findings disclose that in May, 1890, the plaintiff, against the objections and protests of the defendants, turned his cattle into that scope of country known as Coal Bank Hollow, in Albany County, Wyoming, for the purpose of permitting said cattle to wander indiscriminately over and to depasture all of the lands therein, and that the cattle did so range and feed upon all the lands of said locality until driven therefrom by Harrison.

The tract of land, known as Coal Bank Hollow, averages about twenty miles in length from east to west, and about six miles in width from north to south, and was partially enclosed by fences belonging to divers owners, including Cooper, but that Hecht owned no interest therein. At the time the cattle of the plaintiff were turned into the Hollow, there were four openings in the fences partially surrounding the tract, ranging

from a few feet in width to two miles in width, through which cattle could obtain ingress and egress to and from the Hollow, but prior to the driving of the cattle of plaintiff therefrom, these openings were largely but not entirely closed by Marsh and Cooper by building fences across these gaps "upon their own lands," for the purpose of protecting to their own use their lands lying within the Hollow, and these fences, as the court below states, "practically but not absolutely" prevented the ingress and egress of cattle. Marsh and Cooper owned about one-half of the lands in this enclosure, all the odd-numbered sections and square miles of land therein, and a small tract beside, nearly all the even-numbered sections being unappropriated public lands of the United States, unaffected by the right, title or claim of any person or persons, save such rights as existed in favor of the general public. Marsh having disposed of all his interest in the lands to Cooper before the alleged acts of trespass in driving plaintiff's cattle from the enclosure were committed, Cooper was the sole owner of the same at the time of the alleged trespass and at the time of the suit. Harrison, acting as the servant of Cooper and under his direction, drove the cattle of plaintiff, numbering 760 head, from the enclosed tract, through a gap in the fence, turning them loose on the open range, just outside of the enclosure, and this act, the court finds, was without malice, and without any intention to injure or damage the cattle, but for the sole purpose of preventing them from trespassing upon and depasturing the lands of Cooper. It was further found by the court that no loss, injury or damage resulted to plaintiff or to his cattle from such driving of the same, and that until the cattle of plaintiff were so driven out of Coal Bank Hollow it had been generally used by cattlemen of the vicinity as a common cattle range, and the cattle of plaintiff had been accustomed to graze there.

Marsh did not participate in any manner in or authorize the removal of the cattle from the locality mentioned. Cooper was not served with summons, did not appear, and was not considered a party to the suit. As conclusions of law, the district court found that the driving of the cattle by Harrison in

the manner that the same was done, was not a trespass, but was the exercise by him, as a servant of Cooper, of the right to protect the lands of Cooper from being trespassed upon and depastured by the cattle of plaintiff; and that the plaintiff was not entitled to recover anything from the defendants Marsh and Harrison, or either of them. The judgment entered by the court is in these words: "It is therefore considered, ordered and adjudged by the court that the plaintiff take nothing; and that the defendants, Robert Marsh and Frank O. Harrison, do go hence without day." No allowance of costs is made to either party.

There are thirty assignments of errors. Some of them relate to alleged errors of the trial court in admitting certain testimony on behalf of the defendants, under objections of the adverse party, and in refusing to strike out certain portions of the testimony of witnesses for defendants; and other assignments of error are based upon the findings of fact and conclusions of law.

But little importance was attached to the former class of assigned errors in the brief, and they were barely mentioned upon the oral argument. We might well, therefore, treat them as waived, but it is unnecessary to consider them, as a consideration of a controlling point in the case, which will hereafter be developed, will govern the disposition of the case. Upon the merits, the entire question hinges upon the right of Harrison, acting within the scope of his employment, to drive the cattle of Hecht from the enclosure embracing within its limits the large tract of land known as Coal Bank Hollow, which contained the lands of Cooper, the employer of Harrison, and those of the government, the former consisting of the alternate odd-numbered sections or square miles of land and a few other parcels, and the latter nearly all the alternate and even-numbered sections, which were unappropriated lands of the United States, which Hecht in common with other stockgrowers had a right to depasture and graze with his cattle and live stock, under the implied license extended by the government for many years to the public to graze live stock upon these unappropriated public lands in the grazing regions of

this country. By the completion of the enclosure of Coal Bank Hollow, Cooper enclosed the government sections with those of his own, all of these sections enclosed alternating in their location from the government survey like the arrangement of squares upon a checker board. If Cooper had enclosed his own lands by fences separating them from those of the government—that is, each section by itself, he would have effectually prevented the depasturing of the government lands by the public generally, except himself and the owners of land contiguous to the government sections thus enclosed, because the enclosure of each of his alternate sections would have also enclosed the government sections on either side of each section.

It may be urged that he would have been bound to leave spaces at the angles of the sections touching the government sections for the passage of the public generally and of live stock, although the grant to his predecessor in title, the Union Pacific Railroad Company, the government reserved no right-of-way, on the ground that the government, in its grant of all the alternate and odd-numbered sections to such railway company, impliedly reserved ways of easement and of necessity to its officers and agents, those desiring to enter the land by filing thereon, and to its licensees, but this precise question has never been directly decided by any decision cited or coming under our observation, and it is unnecessary to decide it in this case. It is contended by the plaintiff in error that the completion of the enclosure of Coal Bank Hollow by Cooper, even by fencing wholly on his own lands, was unlawful under the terms of the Act of Congress forbidding the enclosure of any part of the public domain, entitled, "An Act to prevent unlawful occupancy of the public lands," approved February 25, 1885 (23 U. S. Stat. at Large, p. 321). The matter was before the Supreme Court of Wyoming Territory in the case of the United States v. Douglas-Willan Sartoris Co., 3 Wyo., 288, where a majority of the court held that the act covered the case of a land owner constructing a fence wholly on his own land, when it served to enclose government lands with those of such land owner, but one of the justices held the act was

unconstitutional, so far as forbidding as a nuisance the erection by a party of a fence wholly upon the limits of his own land as not a legitimate exercise of the police power, and an unwarranted invasion of private property, while the other justice held the act unconstitutional. The remaining justice held that, notwithstanding the apparent language of the act; it was not intended to forbid the erection by a land owner of a fence wholly within the limits of his own land. Accordingly, the judgment below was affirmed and the temporary injunction obtained by the government was dissolved. For some reason, the case was never taken to the Supreme Court of the United States. The trend of recent decisions is contrary to the ruling of our territorial Supreme Court, but the question has never been directly decided by the Federal Supreme Court, although the case of Buford v. Koutz, 133 U. S., 320, sustains the Supreme Court of Utah in the affirmance of a judgment of a lower court refusing an injunction prayed by parties owning tracts of land originally granted by the government to the Central Pacific Railroad Company, against parties threatening an invasion of their unenclosed lands for the purpose of grazing on the government sections alternating with those of the land grant. The following cases hold directly contrary to our territorial Supreme Court: U. S. v. Buford, 8 Utah, 173; U. S. v. Brighton Ranch Co., 25 Fed., 465; U. S. v. Brighton Ranch Co., 26 id., 218; U. S. v. Camfield, 59 Fed., 562, the latter being affirmed in the recent case of Camfield v. U. S. by the Circuit Court of Appeals for the Eighth Circuit, 66 Fed., 101. But in the case of United States v. Brighton Ranch Company, 26 Fed., 218, Judge Brewer remarked: "So long as the government does nothing, an individual might, perhaps, not challenge the occupation by defendant (of unappropriated public lands); but the right of the government to interfere, to challenge the occupation, and to compel the defendant to desist from it, is not lost by mere delay in enforcing it." See Keith & Barton v. Tilford, 12 Nebr., 271, 276. As the matter of the unlawful fencing of the public domain may be brought to the attention of the government through its law department, by filing an affidavit with the local

attorney for the government, under the act of 1885, it may be that the proper course would be to proceed as the statute directs, instead of entering the enclosure by removing or tearing down the enclosure or some portion thereof. In this case, the cattle of plaintiff were turned into Coal Bank Hollow, the enclosure of which was afterwards completed by Cooper, by the owner of adjacent lands by the authority of plaintiff and at his direction.

Under the common law, the owner of cattle is required to take care of them, and if they trespass upon the lands of another, the owner is responsible, even if there be no fence. But this rule, in a multitude of cases, has been held not to be applicable to the sparsely settled sections of this country, where legislation defining lawful fences has been enacted, and where the custom has prevailed from the early settlement of the west to permit cattle to graze on unenclosed lands as a common. See Kerwhacker v. Ry. Co., 3 O. S., 172; Morris v. Fraker, 5 Colo., 425.

A distinction is made between cattle and sheep, as the latter animals, from their nature, require to be under the care of a herder, and so the owner of sheep has been held responsible for their trespasses upon lands enclosed with a fence that would exclude cattle but not sheep. Willard v. Mathesus, 7 Colo., 76. In many of the Western States statutes are in force defining a lawful fence, and it is generally held that where cattle accidentally wander or stray on the unenclosed lands of another, the owner of the cattle is not responsible for their trespasses. Chase v. Chase, 15 Nev., 259. Our statute defining a lawful fence and providing for damages for animals breaking the same, is in line with the legislation of the newer States, where the common law rule requiring owners of cattle to take care of them has been abrogated. Title 50, Rev. Stat. Wyo., as amended by Ch. 33, Sess. Laws of 1888. The general rule permitting cattle to run at large without holding the owner responsible for their trespasses upon the unenclosed lands of another, is subject, however, to one important exception, that where such live stock are driven upon the unenclosed lands of another, without his permission, the owner is respon-

sible for whatever damage they may cause while there. Delaney v. Errickson, 11 Nebr., 533, overruling on this point Delaney v. Errickson, 10 Nebr., 492; Lazarus v. Phelps, 152 U. S., 81, where it is held that the Texas statute relieving stock owners from liability for trespasses upon unfenced or insufficiently fenced lands, merely condones accidental trespasses, and does not operate in favor of one who intentionally causes his stock to graze upon lands of another; Larkin v. Taylor, 5 Kans., 446; Powers v. Kindt, 13 Kans., 74.

The act of the plaintiff in turning his cattle into a scope of country partially enclosed, where they must inevitably wander upon and graze the lands of another, though unenclosed, while grazing on the government lands separated from private lands only by imaginary lines, might make him responsible for their damage, under the rule announced in the case of Lazarus v. Phelps, supra, where Lazarus fed with his own cattle and those of others left with him as agister, to the full extent of the lands in a large enclosure, being those leased by him and those owned by Phelps. He was held responsible in damages, as he turned into the enclosure more cattle than were sufficient to consume the grass on the lands leased by him, so that they must have fed upon the lands of Phelps lying in the enclosure and alternating by sections with the lands leased by him. But upon this point we express no opinion, nor upon the right of Harrison to remove the cattle of Hecht, for the reason that the enclosure was overstocked. The whole case may be decided upon another point. The evidence fully sustains the finding of the trial court "that no loss, injury, or damage of any kind, in any way, resulted to the said plaintiff, or to his said cattle, or any of them, from the driving of said cattle by the defendant Harrison as aforesaid." The cattle of the plaintiff Hecht were gently and carefully driven by Harrison's orders to the Foot Creek range, immediately adjacent to the enclosure of the Coal Bank Hollow lands, and this range to which they were driven had formed a part of the same range as Coal Bank Hollow. The evidence shows that the range to which they were driven contained better feed and a larger water supply, better distributed, than Coal Bank Hol-

low, from whence they were driven. The cattle of plaintiff were in better condition at the time of the fall round-up than the cattle of Cooper and others which remained in Coal Bank Hollow.

The only damages, therefore, that could have been allowed the plaintiff in error in the court below were merely nominal damages, for they are always due for the positive and wrongful invasion of another's property, and a judgment which should have been given for a plaintiff for nominal damages, but was rendered for the defendant, will be reversed, if such damages will entitle plaintiff to costs. But the rule is otherwise, when the judgment is only erroneous for not giving a plaintiff nominal damages, and it will not be reversed, nor will a new trial be granted, unless he is mulcted with the costs. 1 Sutherland on Damages, 13.

Some of the courts evidently do not regard the question of costs in such cases, and will not reverse for the sake of allowing the plaintiff nominal damages, even where costs are allowed to the adverse party. Our statute relating to costs, among other things, provides that, "when the judgment is less than one hundred dollars, unless the recovery be reduced below that sum by counter-claim or set off, each party shall pay his own costs." Rev. Stat., Sec. 2696. In a certain class of cases, frequently denominated "hard actions," the section cited further provides in actions for libel, slander; malicious prosecutions, false imprisonment, criminal conversation, seduction, action for nuisance, or against a justice of the peace for misconduct in office, when the damage assessed is under five dollars, the plaintiff shall not recover costs. This section of our statute was borrowed from the Ohio code, Rev. Stat. Ohio, Sec. 5349, omitting the initial words, "If it shall appear that a justice of the peace has jurisdiction of the action and the same has been brought in any other court," etc. As this omission was intentionally made in our statute, the legislative intent is clear, that the penalty provided in the statute in requiring the plaintiff to pay his costs, in case of a recovery less than one hundred dollars, where his claim is not reduced by set-off or counter-claim, is not because he brought his suit

in the higher court when he might have instituted his proceedings before an inferior tribunal, where parties are not put to the expense of going to the county seat for trial, but probably to provide a penalty for the prosecution of trifling suits. If the judgment of the court below in favor of the defendants is correct, costs should have been allowed to the defendants, as of course. Rev. Stat. Wyo., 2697. But the judgment does not include costs. It is that the plaintiff take nothing; and that the defendants do go hence without day. A judgment must be certain and definite, and if costs are included they must be inserted.

Where a judgment purports to be for costs only, but the amount of such costs is left blank therein, the judgment not being exact as to costs, will be reversed. Mosher v. Commissioners, 2 Wyo., 462; Sibley v. Howard, 3 Denio (N. Y.), 72; Black on Judgments, 115. Doubtless the district court could have corrected its judgment and included costs, during the term, and even after, if the error was a clerical misprison, or, perhaps, if the court had unintentionally omitted costs, and in a direct proceeding for the modification of the judgment on error, the appellate tribunal would correct the omission at the instance of the party injured. Lewis v. Ross, 37 Me., 230. The defendant below does not complain, and as he alone is affected by the omission to allow him costs, it is apparent that the plaintiff cannot complain, because the judgment is favorable to him, and he is not compelled to pay the costs of defendant upon a judgment in favor of the latter without the allowance of costs which the statute provides. If the plaintiff was entitled to recover at all in the court below, under the evidence, he was entitled to recover but nominal damages, as the evidence shows that he suffered no actual damage, but was benefited by the alleged trespass of the defendant, as his cattle were in better condition than they would have been had they not been driven from one part of the range to another, which was larger, better supplied with water, and containing more feed, with less live stock to consume it. If the plaintiff had obtained judgment below, each party would have been compelled to pay his own costs, and that is the effect of the pres-

ent judgment. The only difference is that the plaintiff would have been entitled to nominal damages merely, and this being the case, we will not reverse the judgment to allow the plaintiff one cent. The doctrine pervading the adjudged cases is that a wrong ruling is not available unless it does harm in a material degree to the substantial rights of the complaining party, and this is the theory of our code of civil procedure. Not only must there be harm in the error, but it must be so important as to merit the consideration of the appellate tribunal, and to take something more than nominal value from the complaining party. It is upon this principle that the failure to assess nominal damages is placed in the category of harmless error. An exception to this general rule is where an important right is to be vindicated or where an action is necessary to prevent an unjust or illegal claim from ripening into a right by long-continued possession, and then the court will enforce the right to merely nominal damages. Elliott's App. Proc., Sec. 636; Hibbard v. W. U. Tel. Co., 33 Wis., 558, 569; Meyer v. Huse et al., 33 Ill. App., 328; Smith v. Weed Sewing Machine Co., 26 O. S., 566; State v. Miller, 5 Blackford (Ind.), 381; Jennings v. Loring, 5 Ind., 250; Robinson v. Gentry, 2 Bibb (Ky.), 542; Watson v. Van Meter, 43 Iowa, 76; Hickey v. Baird, 9 Mich., 32.

The right of the plaintiff in error to enjoy what is common to all, the privilege of grazing his cattle upon the public domain, under the implied license of the government, is not affected by this decision, for that right is conceded to him, and he will not be deprived of such right by the decision of this court. Neither will he lose the right to graze his cattle on that portion of the public domain which is not appropriated, lying within the limits of the tract enclosed, from which his cattle were driven. He has not been damaged at all by the acts of the defendant, as the evidence in the case discloses, and the removal of his cattle from one portion of the public range to another, as he claims, is but a mere technical injury, as he was benefited and not injured by such removal.

As this injury is not permanent in its effects, and he is in no worse situation than he was before, even if his contention is

correct, we will not put the parties to the trouble and expense of a re-trial, even if we thought his rights had been invaded by any act of the defendant, upon which branch of the case we have grave doubts, but upon which we express no opinion. For the reason that we ought not to reverse a cause, because the plaintiff might be entitled to nominal damages only, where the matter of costs is not affected, and where no rights of the plaintiff need to be vindicated or are imperiled, the judgment of the district court is affirmed.

Mr. Justice Potter, being of counsel in the trial court, announced his disqualification, and Honorable Richard H. Scott, Judge of the district court for the First Judicial District, sat in his stead.

CONAWAY and SCOTT, JJ., concur.