## GARRETSON v. AVERY.
(No. 915; Decided December 16th, 1918; 176 Pac. 433.)

Animals—Duty of Land Owner to Maintain Fence—Common Law Rule—Defects In Premises—Injury to Livestock Running at Large—Negligence — Statutes — Construction — Unlawful Enclosure—Fences.

1. The common law rule requiring the owner of domestic animals to restrain them has never been enforced in this state because of different conditions existing that render the rule inapplicable, the owner of such animals having a right to permit them to run at large, and no actionable trespass is committed by such animals lawfully running at large, or straying upon uninclosed lands.

2. The rule of the common law that it is not the duty of a land owner to fence against the livestock of another, is also the rule in this state, in the absence of a contract or statute imposing that duty, or unless such duty has arisen by prescription.

3. Where no obligation rests upon a land·owner to fence out another's livestock, or to prevent them from straying or entering upon his land, the owner of uninclosed land is under no duty to make or keep them in safe condition for stock straying thereon.

4. Comp. St., 1910, Section 2578, defining lawful fence, including therein barbed wire, post and pole, and board fences, and Section 2588, making all persons maintaining any unlawful wire fence liable in a civil action for damages to animals, "by reason of such unlawful enclosure", held not to make landowner maintaining barbed wire fence other than described in statute liable for death of a cow which strayed into an alfalfa field, when the alfalfa was a dangerous feed, the words "unlawful enclosure" meaning merely "fence".

5. The penal provisions of Comp. St., 1910, Sections 2587, 2588, are clearly intended not to require land to be enclosed, but to prevent the building or maintaining of a wire fence in any other manner than that declared to be lawful, which might cause injury to animals and perhaps persons by coming in contact therewith. They do not impose the duty of fencing out another's livestock and have no reference thereto.

6. Comp. Stats., 1910, Section 2589, as copied from Revised Statutes, 1899, Section 1984, erroneously omits the words "on or before the first day of August, 1888", which were

included in the original enactment, so that there was no general provision in the original section for the reconstruction of unlawful wire fences constructed after that date.

ERROR to the District Court, Big Horn County, HON P. W. METZ, Judge.

Action by G. J. Garretson against H. C. Avery. Judgment for defendant, and plaintiff appeals.

*R. B. Landfair,* for appellant.

If one constructs a wire fence, it must be a lawful fence, as defined by Section 2578, Comp. Stats. 1910; and after so constructed, it must be maintained as a lawful fence, else the owner is liable for all damages to stock by reason thereof under Section 2588 Comp. Stats. 1910. Stock owners have implied license to depasture their stock on a public range and are not guilty of any contributory negligence in so doing. The negligence of respondent in not maintaining a lawful fence was the approximate cause of the death of the animal. (Sections 2578, 2588 Comp. Stats. 1910.) If a land owner has a lawful fence and a breachy animal breaks through and does damage, the owner of the animal is liable. (Section 2584, Comp. Stats. 1910.) Appellant had a right to assume that respondent maintained a lawful fence and an injury to appellant's stock by reason of respondent's unlawful enclosure creates a liability. (Loveland v. Gardiner, 79 Calif. 317, 21 Pac. 766.) An enclosure is any ground enclosed by a lawful fence. (Smith v. Williams, 2 Mont. 195.) Stockgrowers have an implied license to depasture the public range. (Martin v. Sheep Company, 12 Wyo. 432; Live Stock Co. v. McIlquam, 14 Wyo. 209; Section 2614, Comp. Stats. 1910.) Where animals were lawfully running at large, recovery may be had unless the owner was guilty of actual negligence. (Isbell v. R. R., 27 Conn. 393, 71 Am. Dec. 78; Haughey v. Hart, 62 Iowa 96, 17 N. W. 189; Kerwhacker v. R. R., 3 O. St. 172, 62 Am. Rep. 246; Wilhite v. Speakman, 79 Ala. 400; 19 Cyc. 487; 29 Cyc. 444.)

*R. B. West,* for respondent.

The case arises under Section 2588, Comp. Stats. 1910. Defendant admits that in Wyoming livestock may lawfully run at large, but contend that if one maintains an unlawful fence, he will be liable in damage for injury occasioned by stock coming in contact with it; an enclosure is an artificial fence surrounding one's estate. (Bouvier Law Dictionary.) The only case we have found sustaining the damages for injuries to animals coming in contact with an unlawful fence is that of Sisk v. Crump, 2 Am. St. Rep. 213. The general rule is that no liability exists. (29 Cyc. 444.) The owner of land not enclosed by a lawful fence was held not liable for an ox killed by eating green corn upon the land. (Herald v. Myers, 28 Ia. 378.) A land owner is not permitted to construct traps or maintain dangerous places upon his land, but this rule has no bearing upon the case at bar. The recovery in the words of the statute is limited to injuries sustained by reason of unlawful wire fences. (Section 2588, Comp. Stats. 1910.) Apparently the legislative intention in limiting the liability to wire fences was that such fences improperly constructed or poorly maintained constituted a trap and might injure stock. Under plaintiff's theory, a land owner growing a crop of alfalfa unfenced would be liable to the owner of stock straying upon the same and dying from the effects of eating the alfalfa, but if the owner should commence the construction of a fence enclosing his land and before the completion thereof, cattle should stray upon his land and die from the effect of eating alfalfa, the land owner would be liable in damage. The result of such a construction would be so utterly absurd that no court would give it consideration. It is respectfully submitted that no liability is shown and that the judgment of the District Court should be sustained.

POTTER, CHIEF JUSTICE.

This cause was heard in the district court upon a general demurrer to an amended petition, and the demurrer was sustained. The plaintiff excepted thereto and elected to

stand upon the petition without-pleading further, and thereupon a judgment was rendered in favor of the defendant. The case is here on appeal.

The petition alleges in substance: That on or about July 20, 1916, the defendant was occupying, using, enjoying, maintaining and in charge of a certain enclosure in Big Horn county, this state, to-wit: The NE¼ of the NE¼ of Sec. 27, Twp. 50 N., Range 93 W., within which said enclosure the defendant was cultivating and raising alfalfa grass. That he did not keep or maintain a lawful fence around said enclosure, but that the fence was unlawful in this: That in some places there were only two wires of the wire fence around the enclosure, between posts about 30 feet apart and without any stays between the posts; that the wires were loose and sagging; and the fence was in such condition that it would allow cattle to stray and enter the enclosure. That green alfalfa grass is a well known danger to cattle used to dry feed only. That on or about said date the plaintiff was the owner of a cow of the value of one hundred dollars, which he had allowed on that date and previous thereto to run upon the public range and was used to dry feed only. That the eating of green alfalfa grass by cattle used to dry feed only causes them to bloat and is invariably fatal to them, a fact generally known to all cattle raisers, ranchers, and well known by the defendant. That on or about said date, by reason of the careless, negligent and unlawful maintaining by the defendant of his said fence, the said cow of the plaintiff strayed in and upon the said enclosure and ate green alfalfa grass and thereby became bloated and died, to plaintiff's damage in the sum of $100. And judgment was prayed for that sum with interest and costs.

It will be observed from these allegations that the right of action or claim for damages is based solely upon the alleged fact that defendant maintained an unlawful wire fence around said land, referred to as his enclosure, which would allow cattle to stray and enter thereon. No other act of negligence or violation of duty is alleged, nor that the de-

fendant was bound by contract or otherwise to build or maintain a fence enclosing the land or the crop growing thereon. And it is not here contended that there would be any liability on any other ground than that alleged in the petition. But the appellant's contentions are stated in his brief substantially as follows: 1. If a wire fence is constructed, it must be a lawful fence. 2. That, having been constructed, it must be maintained as a lawful fence, or the owner will be liable for all damages to stock caused by the failure to so maintain it. 3. That there is an implied license to depasture livestock on the public range, and the owner is not guilty of contributory negligence in doing so. 4. That respondent's negligence in failing to maintain a lawful fence was the proximate cause of the death of the animal.

Appellant concedes in his brief that no obligation to fence is imposed by law, and, further, quoting from the brief: "It is true the law is well settled that where there is no obligation to fence and trespassing stock go upon unenclosed lands no recovery can be had for damage to crops or damage to stock, each using ordinary care." But it is argued, in substance, that, although a landowner is under no obligation to fence out another's livestock, and may leave his land and growing crops unenclosed and himself thereby free from liability for injury to stock straying thereon, it becomes his duty, under the statute, when constructing a wire fence around or to enclose his land, to so construct it that it will be a lawful fence as defined by the statute; and that after it has been constructed the further duty is imposed upon him to maintain it as a lawful fence; and that the rule of no liability where there is no obligation to fence, and cattle or other domestic animals trespassing upon unenclosed lands are injured or die from eating some poisonous substance thereon or from falling into a pit, well or other excavation, is therefore not applicable.

The common law rule requiring the owner of cattle and other domestic animals to restrain them has never been in force in this state, because of different conditions existing rendering that rule inapplicable, the owner of such animals

having a right to permit them to run at large; and no action-able trespass is committed by such animals lawfully running at large straying upon unenclosed lands. (Hecht v. Harrison, 5 Wyo. 279, 40 Pac. 306; State v. Johnson, 7 Wyo. 512, 54 Pac. 502; Cosgriff v. Miller, 10 Wyo. 190, 68 Pac. 206, 98 Am. St. Rep. 977; Martin v. Platte Valley Sheep Co., 12 Wyo. 432, 76 Pac. 571, 78 Pac. 1093; Healy v. Smith, 14 Wyo. 263, 83 Pac. 583, 116 Am. St. Rep. 1004; Hardman v. King, 14 Wyo. 503, 85 Pac. 382; Gillespie v. Wheatland Industrial Co., 22 Wyo. 331, 140 Pac. 832, 52 L. R. A. (N. S.) 133, Ann. Cas. 1917A, 287, 52 L. R. A. (N. S.) 133.) The "reason for such non-liability", as explained in Gillespie v. Wheatland Industrial Co., "is not because they are not trespassing, but because no duty rests upon the owner to keep his stock off uninclosed land and he is not guilty of negligence in failing to do so or in permitting them to run at large; and being guilty of neither a wilful trespass, nor negligence in the care of his stock, he is not answerable in damages; and for the further reason that the land owner has the right to exclude such stock from his premises by fencing against them, or otherwise preventing them from coming or being thereon, and if he neglects to do so he takes the risk of trespass by animals lawfully running at large." But the rule of the common law that it is not the duty of a land owner to fence out or against the cattle or live stock of another is also the rule in this and other western states where the same conditions exist, in the absence of contract or statute imposing that duty upon the land owner, or unless such duty has arisen by prescription. And, as a general rule, where no obligation rests upon a land owner to fence out another's live stock, or to prevent them from straying or entering upon his land, "the owner of uninclosed lands is under no duty to make or keep them in safe condition for stock straying thereon." (Gillespie v. Wheatland Industrial Co., supra.) In that case it was sought to recover damages for the death of cattle caused by their falling into an open ditch upon unenclosed land. It was held that the owner could not recover. And the principle, for the same

reasons, has been applied in the absence of a duty to fence against live stock, where animals have entered upon land through an insufficient or a defective fence and died from eating or drinking injurious matter left or growing thereon. (Herold v. Meyers, 20 Ia. 378; Chemical Co. v. Henry, 114 Tenn. 152, 85 S. W. 401; Morrison v. Cornelius, 63 N. C. 346; Fennell v. Street Ry Co., 70 Tex. 670, 8 S. W. 486. And see Ponting v. Noakes, 2 Q. B. Div. L. R. (1894) 281.) Several cases in support of the general rule that it is not the duty of the owner of unenclosed lands to make or keep them in safe condition for straying stock are cited in Gillespie v. Wheatland Industrial Co., supra, and many others are cited in the elaborate notes to that case as reported in Ann. Cas. 1917A, pp. 288 to 296, and 52 L. R. A. (N. S.), pp. 133 to 140.

As above stated, the right of action in this case is based upon the alleged negligence of the defendant in failing to maintain a lawful fence, or in maintaining a fence surrounding his land in such a defective condition that it permitted plaintiff's cow to enter upon the land through said fence. And in support thereof the plaintiff relies upon the provisions of Sections 2578 and 2588, Compiled Statutes of 1910. Section 2578 defines what shall constitute a lawful fence in this state, and as in force in 1916, when this cause of action is alleged to have accrued, reads as follows (omitting some immaterial provisions at the end of the section):

"The following shall be a lawful fence in the State of Wyoming: A fence made of tubular wrought iron fence posts or sound wooden posts and three spans of barbed wire, or two spans of barbed wire with a wooden rail on top, and said posts so used to be tubular wrought iron fence posts, with cast iron base to be twenty-two inches in length, or wooden posts at least four inches in diameter, set firmly in the ground at least twenty inches deep, either side of said posts, so used, to be placed at no greater distance apart than eighty feet, with iron or wooden stays not more than ten feet apart; a post and board fence made of sound posts, not

less than four inches in diameter, set substantially in the ground not more than ten feet apart, with three boards of one inch lumber, eight inches wide, and not more than ten inches apart, or four boards of one inch thick and six inches wide, not more than eight inches apart, securely fastened with nails or otherwise, a three pole fence with round poles, not less than two inches in diameter, at the small end, with either upright or leaning posts, not more than twenty-two feet apart, and securely fastened with nails, wires, or otherwise; Provided, That all other fences made and constructed of boards, rails, poles, stones, or hedge plants, or other material except wire, which, upon evidence, shall be declared to be as strong and as well calculated to protect enclosures, and shall be as effective for resisting breaching stock as those hereinbefore described, shall be considered a lawful fence; Provided, That none of the fences above described shall be considered lawful if less than four feet high, except within the corporate limits of an incorporated city or town."

As will be observed, that section describes not only a lawful barbed wire fence, but also a lawful post and board fence, and a lawful pole fence, and provides further that all other fences constructed of any material except wire, shall be considered lawful, which, upon evidence, shall be declared as strong and as well calculated to protect enclosures, and as effective for resisting breaching stock, as those described.

Section 2588 reads as follows:

"Any person or persons, company or corporation who shall construct or maintain, contrary to the provisions of this chapter, any unlawful wire fence, shall be liable in a civil action for all damages to animals that may occur by reason of such unlawful enclosure, and the owner or owners of any such unlawful wire fence shall, moveover, be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than five dollars nor more than twenty-five dollars, and for each subsequent offense the fine shall not be less than twenty-five dollars nor more than one hundred dollars."

Appellant's contention is based particularly upon the pro-
vision of Section 2588, declaring a liability on the part of
one who constructs or maintains an unlawful wire fence for
all damages to animals occurring by reason of the unlawful
enclosure.   And the question to be here determined under
that provision is whether it refers to or includes an injury
or damage such as that alleged in this case, occurring within
the enclosure;  that is to say, a damage not caused by con-
tact with the fence or the wires thereof.   And we think it
does not.   On the contrary, we think it has reference to the
material of which the fence is constructed as a source of
danger to animals coming in contact with it, and to damages
which may be caused by a fence insufficiently or defectively
constructed of wire, as distinguished from one constructed
of other material not possessing the same element of danger
or as likely to cause injury.

The fence statute nowhere declares a liability for damages
occurring by reason of any other kind of unlawful fence or
enclosure or provides any penalty for constructing or main-
taining any other kind of fence not constructed or main-
tained so as to constitute a lawful fence as defined by law.
And it is clear that there must have been some reason for
the above mentioned provisions with respect to an unlawful
wire fence that would not apply to any other kind of fence.
We cannot conceive that the legislature would have singled
out a wire fence and prescribed a penalty for constructing or
maintaining it in an unlawful manner and given a right of
action for damages, as in Section 2588, if it did not have in
mind a danger peculiar to that kind of a fence and a damage
that might occur to an animal therefrom, which would not
exist or be liable to occur in the case of an unlawful post
and board fence, pole fence, or any other kind of fence which
the statute declares or authorizes to be declared lawful,
except one made of wire.

It is certain that if the fence maintained around the land
in question had been constructed of some material other than
wire, and had been so defective that it would not prevent
the entry of animals upon the land, the same injury and

damage might have occurred as that here alleged. And it would seem at least possible that a defect or opening in any other kind of fence might make access to the enclosure more easy and frequent, because of the less difficulty or danger for an animal to pass over or through a fence not made of wire. What possible reason could there have been for limiting the provisions of Section 2588 to an unlawful wire fence if the object was to protect against dangers that might exist within an enclosure because of the condition of the premises or the use made thereof, or injuries that might occur therein as a result of such condition or use? We can conceive of none. Such dangers would not be less nor such injuries less liable to occur from or by reason of any other kind of fence constructed or maintained in a manner insufficient to constitute a lawful fence. The same opportunity for live stock to enter the enclosure may be afforded by such a fence, an equal probability that they will do so may exist, and such live stock will be exposed to the same dangers present within the enclosure, aside from contact with the fence, whatever the material of which the fence is constructed or maintained, if insufficient to prevent an animal from going through or over it upon the enclosed premises. And to construe the provision in question as we have above indicated it should be construed is not inconsistent with the language thereof. Counsel for appellant argues that in declaring a liability for all damages occurring by reason of "such unlawful enclosure" injuries within the enclosure are included, though not caused by the fence otherwise than through its failure to prevent the animal from entering upon the land. But in the sense in which the words "such unlawful enclosure" are there used they mean nothing more than if the word "fence" had been used instead of "enclosure". Construing the word "enclosure" not as standing alone, but in connection with the other words employed in the provision itself and the other connected provisions of the section, it cannot be held to refer to an enclosure as distinguished from the fence. A similar use of the words "enclosure" and "fence" in the same sentence is found in Section 2584, containing provisions

with reference to an action for damages for animals breaching into a lawful enclosure, viz: It is therein provided that if it shall appear "that the plaintiff's enclosure is a lawful fence" he shall be allowed to prove his damages, but if it shall appear "that the plaintiff's enclosure is not a lawful fence" judgment shall be rendered against him. Clearly, the provision aforesaid in Section 2588 refers to an enclosure which is unlawful only because the wire fence is constructed or maintained in an unlawful manner.

The history of the legislation, in view of the condition of the law at the time these provisions were enacted, tends to support our construction of the section. It has been held in many cases that, in the absence of a statute either authorizing or prohibiting the construction of a barbed wire fence, one who negligently constructs or maintains such a fence, that is to say, in a negligent manner, resulting in an injury to live stock by contact with the wires of the fence, is liable in damages for such injury; but it is also held that a fence of that material is not a nuisance, nor its construction negligence, *per se*. (Sisk v. Crump, 112 Ind. 502, 14 N. E. 301, 2 Am. St. Rep. 213; Mullen v. Renzleman, 31 Okla. 53, 119 Pac. 641, Ann. Cas. 1913D, 778. And see note to the Oklahoma case in the volume of Ann. Cas. cited, p. 781.) But when the provisions of our statute here relied on and above quoted were enacted the law on the subject independent of statute was unsettled. The statute containing these provisions was enacted in 1888. (Laws 1888, Ch. 33.) A previous similar statute had been enacted in 1882. (Laws 1882, Ch. 46, Rev. Stat. 1887, Secs. 4192, 4194.) Prior to the Act of 1882 the fence statute did not include a wire or barbed wire fence among those declared to be lawful. (Comp. Laws 1876, Ch. 51.) By these statutory provisions the questions aforesaid relating to the right to construct and maintain a barbed wire fence and the liability for injuries caused thereby were settled, first, by declaring a barbed wire fence to be lawful when constructed in the manner described, and, second, to protect against the natural dangers to live stock of such a fence when improperly constructed or main-

tained, by declaring a liability to damages for injuries occurring therefrom when not constructed or maintained in a lawful manner. We think that must have been the reason for the legislative provisions aforesaid, in view of the unsettled condition of the law on the subject at the time. And the object and intent is carried out by the construction limiting the provision for liability for damages to injury or damage caused by contact with the fence or the wire or wires used in its construction. For such a fence could not cause an injury in any other way that could not equally be caused by a fence improperly constructed of different material, or that could reasonably justify a statutory liability or penalty imposed only upon one constructing or maintaining an unlawful wire fence, as distinguished from a fence constructed of boards, poles, or material other than wire,

We think it true that one constructing or maintaining a wire fence is required by the statute to construct or maintain it as a lawful fence. That seems to follow from the provision of Section 2588 that the owner or owners of an unlawful wire fence shall be deemed guilty of a misdemeanor, and prescribing a fine as punishment upon conviction thereof. And there are other provisions to the same effect in Sections 2587 and 2589, Compiled Statutes, which require the owner of an unlawful wire fence to reconstruct it into a lawful wire fence, and provide a penalty for his refusal or failure to do so. Parenthetically, it may be said that Section 2589, as found in the Compiled Statutes of 1910, which was copied therein from the Revised Statutes of 1899, is not what was enacted by the legislature. The mistake was first made in the Revised Statutes of 1899 by omitting some important words included in the section as originally enacted. The section as enacted was Section 3 of the Act of 1888 (Ch. 33). That section in the original act immediately followed a section containing the provisions now found in Section 2588; and said section 3 provided, not as stated in the Revised Statutes of 1899 and Compiled Statutes of 1910, that "the owner or owners of any unlawful wire fence shall reconstruct the same into a lawful wire

fence", but it provided : "The owner or owners of any unlaw-
ful wire fence shall, on or before the first day of August, A.
D. 1888, reconstruct the same into a lawful wire fence." The
section does not appear to have been amended in any way by
the legislature, and the reason is not apparent for omitting the
words prescribing the date on or before which the fence
shall be reconstructed. As originally enacted, therefore, and
as we think the section must still be understood as providing,
it required the owner to reconstruct the fence on or before
August first, 1888, and could only have referred to unlawful
fences then in existence or that might be constructed prior
to August 1, 1888. The section did not include a general
provision for the reconstruction of unlawful wire fences
constructed after that date. Section 2587, however, provides
in substance that the owner or owners of any unlawful wire
fence, who shall have been convicted of constructing or
maintaining the same shall, within thirty days after such
conviction, reconstruct it into a lawful wire fence, and it
prescribes a penalty for refusal or failure so to do. And
such owner might be convicted under the penal provision of
Section 2588, thereby making Section 2587 operative.

But it does not follow that the owner is liable for damages
for an injury occurring within the enclosure from other
causes than contact with the fence. The statutory require-
ment that a wire fence shall be constructed and maintained
as a lawful wire fence, if constructed or maintained at all
as a wire fence, does not impose the duty to fence or to pre-
vent the entry of another's cattle upon the owner's land.
There would seem to be no doubt that, notwithstanding the
said provisions of the statute, one having constructed and
maintained an unlawful wire fence, as well as a lawful one,
may remove the same and allow his land to remain unen-
closed, unless he is bound by contract to prevent another's
live stock from straying upon his land, or that duty has
arisen by prescription. And it is not otherwise contended
in this case. The penal provisions aforesaid and the pro-
visions requiring an unlawful wire fence to be reconstructed
into a lawful wire fence, are clearly intended, not to require

land to be enclosed, but to prevent the building or maintaining of a wire fence in any other manner than that declared to be lawful, which might cause injury to animals, and perhaps persons, by coming in contact therewith. They do not impose the duty of fencing out another's cattle or live stock and have no reference thereto. The same or similar provisions are not made as to any other kind of fence, and very clearly the legislature did not have in mind the fact that a fence constructed in an unlawful manner might be insufficient to enclose the premises so as to prevent animals from entering thereon. If the purpose was to prevent the construction or maintaining of fences insufficient to keep live stock outside the enclosure, these provisions would not have been limited to wire fences. We have no doubt that the statutory requirement that a wire fence when constructed or maintained shall be constructed or maintained as a lawful fence does not require the owner to keep his land enclosed so as to prevent live stock from entering thereon. It may be true that if a wire fence be lawfully constructed and maintained completely surrounding a tract of land it will keep out live stock. But that is clearly not what the legislature intended to accomplish. The evident purpose was to prevent injuries caused by the wires of an improperly constructed fence made of that material, and not to prevent the straying or trespassing of animals upon land either unenclosed or enclosed by an insufficient fence.

We hold, therefore, that the defendant was under no duty to keep his premises sufficiently enclosed to prevent the live stock of others from going upon his land, and that as the crop growing thereon was not unlawful, but might have been lawfully cultivated and grown upon unenclosed land, the fact that his fence had been carelessly constructed or in a manner other than that declared lawful by statute, and not so as to prevent the cow of plaintiff from going upon the land and eating of the crop thereon, is not liable for the damages claimed, and for that reason the petition fails to state a cause of action. We conclude that the demurrer was properly sustained.

We have some doubt about the regularity of the appeal in this case. In some respects the proceedings do not strictly comply with the statute providing for bringing a cause to this court by appeal. But the question has not been raised by counsel, and as we are convinced that the judgment must be affirmed for the reasons above stated, the questions of practice that might arise upon the record have not been considered. An order will be entered affirming the judgment.

*Affirmed.*

BEARD, J., concurs.

BLYDENBURGH, J., being ill, did not participate in the decision.