2002 WY 105

Kathy A. ANDERSEN, as Personal Representative of the Estates of Jared Steffen, Decedent, and Robert Dean Yates, Decedent; and Jody McCampbell, Individually and as Conservator for Caleb Steffen, a Minor Child, Appellants (Plaintiffs),

v.

TWO DOT RANCH, INC., a Wyoming corporation; and Maria Lopez Hernandez, Appellees (Defendants).

No. 00–67.

Supreme Court of Wyoming.

July 12, 2002.

Representing Appellants: L.B. Cozzens of Cozzens, Warren & Harris, P.L.L.P., Billings, Montana; Matthew F. McLean of Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Billings, Montana; and Stephen L. Simonton of Simonton & Simonton, Cody, Wyoming.

Representing Appellee Two Dot Ranch: Cody L. Balzer of Balzer Carman Murdock, P.C., Casper, Wyoming.

Representing Appellee Hernandez: Katherine L. Mead of Mead & Mead, Jackson, Wyoming.

Representing Amicus Curiae Wyoming Stock Growers Association and Wyoming Wool Growers Association: Harriet M. Hageman and Kara Brighton of Hageman & Brighton, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

* Chief Justice at time of oral argument

1. The appellants-plaintiffs are Kathy A. Andersen, the personal representative for the estates of Jared Steffen and Robert Dean Yates, and Jody

KITE, Justice.

[¶ 1] Three vehicles collided with a cow on a state highway in an area posted as open range resulting in two fatalities. The plaintiffs,[1] representing the deceased and surviving passengers of the third vehicle, sued Two Dot Ranch, Inc. (Two Dot), the owner of the cow, and Maria Lopez Hernandez, the driver of the second vehicle. The district court granted summary judgment for all defendants. We affirm the summary judgment on the claims against Two Dot because allowing livestock on an unfenced highway in posted open range is not evidence of negligence. We reverse the summary judgment in favor of Ms. Hernandez because genuine issues of material fact exist regarding the care she exercised in warning other motorists of the danger and remand the case for further proceedings.

## ISSUES

[¶ 2] We restate the issues presented by the parties as follows:

1. In light of Wyoming's historical adherence to the open range doctrine and statutory provisions regulating grazing and pasturing of livestock, does a livestock owner owe a duty of care to protect the motoring public by preventing his livestock from wandering onto an unfenced road in a posted open range?

2. If there is such a duty, did genuine issues of material fact exist regarding the reasonableness of Two Dot's actions which precluded summary judgment?

3. Did genuine issues of material fact exist precluding summary judgment with regard to the reasonableness of Ms. Hernandez's efforts to warn other motorists of the dead cow in the road?

## FACTS

[¶ 3] Pursuant to our standard of review for summary judgments, we recite the facts from the vantage point most favorable to the plaintiffs, as the party opposing the motions,

McCampbell, individually and as conservator for Caleb Steffen. We will refer to them throughout this opinion collectively as "the plaintiffs."

awarding them all the favorable inferences which may be drawn from those facts. *S & G Investors, LLC v. Blackley,* 994 P.2d 941, 943 (Wyo.2000).

[¶ 4] Highway 294 connects the highway from Belfry, Montana, to Cody, Wyoming, with the highway from Cody, Wyoming, to Powell, Wyoming. Portions of Highway 294 run through Bureau of Land Management (BLM) land commonly known as the North Badlands pasture. Two Dot operates a ranch headquartered about seventeen miles north of Cody and grazes livestock on land leased from the BLM in addition to its own land. The accident occurred on the stretch of Highway 294 which runs through the North Badlands pasture. This area is open range and, accordingly, unfenced. Signs notify travelers that livestock may be on the road.

[¶ 5] Two Dot had historically leased the North Badlands pasture; however, in 1994 the BLM decided to restrict grazing in that area to rejuvenate the pasture. Two Dot continued to maintain cattle in adjoining, fenced pastures. On May 4, 1994, a range management specialist for the BLM discovered approximately thirty-seven head of Two Dot's black Angus cattle in the North Badlands pasture. The cattle appeared to have escaped from the adjoining pasture through a gate with a broken lock. Although Two Dot did not have permission at the time to graze its cattle in the North Badlands pasture, it had an informal agreement with the BLM which allowed it to remove stray livestock without penalty if accomplished in a timely manner. After repairing the lock on May 4, 1994, the BLM agent informed Two Dot of the unconfined cattle.

[¶ 6] Four days later, on the evening of May 8, 1994, the cattle were still in the North Badlands pasture. Dennis and Betty Wagner were traveling west on Highway 294 at approximately 9:00 p.m. when they encountered a group of black Angus cattle on the road. Despite taking evasive maneuvers, the Wagners hit one of the cows. Their vehicle was still operable, so they continued on to their residence in Clark. There is some dispute as to where the Wagners left the cow

which may still have been alive when they left the scene. Mr. Wagner testified the cow was on the right shoulder along the edge of the highway when they drove away. However, after returning home, Mrs. Wagner called the sheriff's office to report the accident and stated there was "a dead cow in the middle of the road."

[¶ 7] Later that night, Ms. Hernandez and her family left Clark traveling east on Highway 294. Ms. Hernandez encountered the cow lying in the middle of the road. Since the black cow blended with the road and the night, she was unable to avoid hitting it.

[¶ 8] Meanwhile, Robert Yates, his girlfriend Jody McCampbell, and her children Jared and Caleb Steffen were also traveling east on Highway 294 some distance behind the Hernandez vehicle. The parties dispute what happened next. Ms. Hernandez claimed that all her passengers were still in her vehicle when the third vehicle struck the cow. Ms. McCampbell, however, stated that, as they approached the scene, a boy waving his arms appeared in their lane of travel. Mr. Yates, who was driving the third vehicle, moved into the other lane to avoid the boy and collided with the cow. At the scene, Ms. Hernandez apparently made statements to police officers which indicated she had sent her son Anthony to warn oncoming traffic although she now denies making any such statements. Mr. Yates and Jared died as a result of the injuries they sustained in the accident. Ms. McCampbell and Caleb were injured but survived.

[¶ 9] The plaintiffs filed suit claiming negligence against Two Dot, the Wagners,[2] and Ms. Hernandez. Two Dot and Ms. Hernandez successfully moved for summary judgment. The district court ruled in favor of Ms. Hernandez concluding there was insufficient evidence to determine whether she, or her son at her direction, acted unreasonably in attempting to warn oncoming traffic. The court noted there was insufficient evidence to determine where Anthony was in relation to the cow or where the cow was located on the road when the third vehicle hit

2. The Wagners reached a settlement with the plaintiffs and are not a party to this appeal.

it. From that, the district court determined a jury could not reasonably conclude Ms. Hernandez acted in an unreasonable manner. The district court also granted Two Dot's motion for summary judgment concluding no duty was owed to motorists traveling through open range. The plaintiffs appealed to this court.

## STANDARD OF REVIEW

 [¶ 10] Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Scherer Construction, LLC v. Hedquist Construction, Inc.,* 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo.2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. *Bachmeier v. Hoffman,* 1 P.3d 1236, 1240 (Wyo.2000). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all the favorable inferences which may fairly be drawn from the record. *Id.* We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scherer Construction, LLC,* 2001 WY 23, ¶ 15, 18 P.3d 645. We do not accord any deference to the district court's decision on issues of law. *Id.*

## DISCUSSION

### *Two Dot Ranch*

 [¶ 11] In order to maintain a claim of negligence, a plaintiff must prove that "the defendant was under a duty of care to protect the plaintiff from injury; the defendant breached that duty; the plaintiff suffered actual injury or loss; and the defendant's breach of the duty proximately caused the injury or loss." *Roberts v. Klinkosh,* 986 P.2d 153, 156 (Wyo.1999). We must determine whether Two Dot owed any duty of care to protect the plaintiffs from suffering injury as a result of colliding with livestock wandering on an unfenced roadway in posted open range. "[W]hether a duty exists and the scope of that duty are questions of law for the court." *Kobos By and Through Kobos v. Everts,* 768 P.2d 534, 541 (Wyo.1989); *see also Vassos v. Roussalis,* 658 P.2d 1284, 1287 (Wyo.1983). If no duty is established, there is no actionable claim of negligence. *Davis v. Black Hills Trucking, Inc.,* 929 P.2d 532, 534 (Wyo.1996).

[¶ 12] The district court concluded there was no duty because the accident occurred in an open range[3] area. The plaintiffs argue the open range doctrine does not excuse a livestock owner from the exercise of reasonable care in pasturing his cattle and applies only to claims for damage caused by trespass of the livestock, thus questioning its relevance to this case. Two Dot counters that the open range doctrine effectively immunizes it from any claims of negligence arising from pasturing its cattle in open range. The Wyoming Stock Growers Association and the Wyoming Wool Growers Association, through their *amicus* brief, assert a duty of ordinary care already applies to both "enclosed" and "open range" livestock owners. However, they maintain the plaintiffs are seeking a new and much broader duty which would require that all owners prevent their livestock from being on open range roadways or be held liable in negligence for failing to do so.

[¶ 13] This is an issue of first impression, which is striking considering the historical prominence of the livestock industry in this state. We note, "in Wyoming, the common law of negligence creates a general duty 'to exercise the degree of care required of a reasonable person in light of all the circum-

---

**3.** Neither Wyoming case law nor statutory law provides a definition of the term "open range" although it is referenced in case law as if it is a self-defining concept. One definition of the term is an area "where there is no stock law or ordinance prohibiting an owner from allowing his domestic animals to roam at large." *Culpep-* per *v. Rachal,* 370 So.2d 154, 155 (La.Ct.App. 1979). Another definition provides "open range is an area in which livestock are kept at large, unrestrained and unattended." *Estate of Shuck v. Perkins County,* 1998 SD 32, ¶ 13, 577 N.W.2d 584, ¶ 13 (S.D.1998). Open range is also referred to as "free range" in some authorities.

stances.' " *Hill v. Park County By and Through Board of County Commissioners*, 856 P.2d 456, 459 (Wyo.1993) (quoting *McClellan v. Tottenhoff*, 666 P.2d 408, 411 (Wyo.1983)); *see also Vassos v. Roussalis*, 625 P.2d 768, 772 (Wyo.1981) ("The standard is fixed as that which is required of a reasonable person in the light of all the circumstances. Some circumstances have acquired particular legal significance which make it possible for the court to fix a more specific standard" (citations omitted)).[4] Further, this court has long held that "common law is the law of Wyoming unless abrogated by statute." *Shunn v. State*, 742 P.2d 775, 778 (Wyo.1987).

> Statutes are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed therein. To have such effect "the language (of the statute) must be clear, unambiguous, and peremptory." *Meek v. Pierce*, 19 Wis. 300, 303. That rule has been consistently adhered to ever since it was so stated in the case cited.

*Unemployment Compensation Commission of Wyoming v. Mathews*, 56 Wyo. 479, 111 P.2d 111, 116 (1941); *see also Urbach v. Urbach*, 52 Wyo. 207, 73 P.2d 953, 961 (1937); *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981, 987 (1918). Absent a manifestation of legislative intent to repeal a common-law rule, statutes should be construed as consistent with the common law. *Carrow Company v. Lusby*, 167 Ariz. 18, 804 P.2d 747, 750 (1990) (en banc).

[¶ 14] Under English common law, the owner or possessor of livestock was strictly liable for damages resulting from their trespasses. *Hecht v. Harrison*, 5 Wyo. 279, 40 P. 306, 308 (1895); 7 Stuart M. Speiser et al., The American Law of Torts § 21:32 (1990). However, the owner of livestock had no duty to keep his animals off the public highways. 7 Speiser, The American Law of Torts, *supra* at § 21:34; James L. Rigelhaupt, Jr., *Liability of owner of animal for damage to motor vehicle or injury to person riding therein resulting from collision with domestic animal at large in street or highway*, 29 A.L.R.4th 431, 439 (1984). Liability attached to the owner of livestock only where he knew the animal had a dangerous propensity or trait or unless he should reasonably have anticipated that injury would result from the situation. *Id.* The "fence in" rule is the prevalent legal doctrine in the high population density states of the Eastern United States. *See generally Fogle v. Malvern Courts, Inc.*, 554 Pa. 633, 722 A.2d 680, 682–83 (1999); *Byram v. Main*, 523 A.2d 1387, 1389 (Me.1987); *Johnson v. Robinson*, 11 Mich.App. 707, 162 N.W.2d 161, 162–63 (1968); *Nixon v. Harris*, 15 Ohio St.2d 105, 238 N.E.2d 785, 786–87 (1968). In the American West, the common-law "fence in rule" was generally rejected in favor of an open range or "fence out" rule because of the unique physical and demographic characteristics of the area. *Garretson v. Avery*, 26 Wyo. 53, 176 P. 433, 434 (1918). This court has not had the opportunity to apply the open range doctrine, or "fence out" rule, in a situation where personal injury is caused by a collision with livestock on a public highway in posted open range. Likewise, no specific statute addresses the respective liability of the parties in this type of situation. Consequently, we must determine how our common law, developed in concert with our statutes governing the control of livestock on public highways, should be applied in this context.

## A. The Open Range Doctrine

[¶ 15] Dating from Wyoming's territorial days, the legislature has methodically enact-

---

4.
> Generality of the reasonable 'care standard. In the latter half of the 19th century, courts began to develop a general duty or standard of care describing the duty of all persons to exercise ordinary care, meaning the care of a reasonable person, for the benefit of other persons, not merely the particular duties of, say, a veterinarian to a farmer. The standard for determining negligence purports to apply invariantly to all negligence cases.

> More specific standards. It may be more accurate to say that the general duty or standard of ordinary care is a default rule, a standard applied when there is no other more specific standard addressed to the particular parties or their particular situation and where the defendant has not undertaken some different level of care.

Dan B. Dobbs, The Law of Torts § 117 at 277 (2000).

ed statutes which impact the common-law rules relating to animals running at large. The territorial legislature enacted Wyoming's first "lawful fence" statute (Fence Out Statute) in 1869 which firmly rejected the common-law "fence in" rule.[5] 1869 Wyo. Gen. Laws ch. 58. It provided, through various sections, the specifications for construction of a lawful fence, maintenance of joint partition fences, restraint and custody of breaching animals, and, most importantly to the instant discussion, liability for breach. This latter provision set forth:

> Any person or persons owning or having in his or her or their possession or charge, any horses, mules, cattle, or any one of such animals, which shall breach over or under, or breach into any lawful inclosure belonging to any person or persons other than the owners of such animal or animals, such person or persons owning or having in charge or possession such breaching animal or animals shall be liable to the party or parties sustaining such injury, for all damages he, she, or they may have sustained by reason of such breaching as aforesaid, to be recovered in a civil action before any court having jurisdiction thereof or by arbitration....

1869 Wyo. Gen. Laws ch. 58, § 3. The Fence Out Statute established the full liability of livestock owners for all damages caused by livestock breaching a "lawful fence," not just for damages to property. It is notable that this provision has remained essentially unchanged since its enactment.[6]

[¶ 16] The rejection of the common-law "fence in" rule, in favor of the "fence out" open range doctrine, is well reflected in Wyo-ming case law and is perhaps most succinctly stated in *Martin v. Platte Valley Sheep Co.*, 12 Wyo. 432, 76 P. 571, 574 (1904) (emphasis added):

> The common-law rule requiring the owner of cattle to confine them, or, in default thereof, to answer for any damages occasioned by their trespasses upon the lands of another, is abrogated, or, rather, *never obtained,* in this state, nor in the other Western states.... In this state cattle are permitted to run at large, and the principle in force here is that no actionable trespass is committed when domestic animals lawfully running at large wander upon and depasture the uninclosed lands of a private owner.

[¶ 17] *Gillespie v. Wheatland Industrial Co.*, 22 Wyo. 331, 140 P. 832 (1914), clarified the nature of the open range doctrine as applied in Wyoming. In *Gillespie*, the plaintiff's cattle strayed from public range onto the defendant's unenclosed land and were killed when they fell into a ditch. The issue presented was whether the landowner was liable to the livestock owner for creating an unsafe or dangerous condition on his unenclosed land. The court concluded the landowner was not liable in that instance, and the court's logic is relevant to the matter at hand:

> The gist of the argument of counsel for plaintiff is that the cattle were not unlawfully on the premises, and hence were not trespassing thereon. This argument is based upon the holding that the owner of live stock running at large upon the range is not liable for damages done by such

---

**5.**

[T]he proprietor or tenant of land is not obliged to fence it, but every man is bound at his peril to keep his cattle on his own premises. This he may do in any manner he chooses, but in the event of their escape, he is held liable for their trespasses on the land of others, whether fenced or unfenced, no man being required to fence against the cattle of others, in the absence of an agreement, prescription, or statute to the contrary.

4 Am.Jur.2d *Animals* § 59 at 399 (1995).

**6.**

Source: C.L. 1876, ch. 51, §§ 3, 5 to 8; R.S. 1887, §§ 4185, 4187 to 4190; R.S. 1899, §§ 1976 to 1980; C.S.1910, §§ 2581 to 2585; C.S.1920, §§ 3074 to 3078; R.S.1931, §§ 42–104 to 42–108; C.S.1945, §§ 66–509 to 66–513; W.S.1957, §§ 11–540 to 11–544; W.S. 1977, §§ 11–33–110 to 11–33–114; Laws 1978, ch. 32, § 1; 1979, ch. 144, § 1. Amended by Laws 1996, ch. 69, § 1, eff. March 19, 1996; Laws 2000, ch. 24, § 4, eff. July 1, 2000.

Wyo. Stat. Ann. § 11–28–108 (LexisNexis 2001).

In 1996, the language was amended from "horses, mules or cattle" to "livestock or domesticated buffalo," and, in 2000, all references to "county court" were amended to "circuit court" consistent with Wyo. Stat. Ann. § 5–9–102 (LexisNexis 2001).

stock straying upon the uninclosed lands of another. *But the reason for such nonliability is, not because they are not trespassing, but because no duty rests upon the owner to keep his stock off uninclosed land, and he is not guilty of negligence in failing to do so, or in permitting them to run at large, and, being guilty of neither a willful trespass nor negligence in the care of his stock, he is not answerable in damages,* and for the further reason that the landowner has the right to exclude such stock from his premises by fencing against them, or otherwise preventing them from coming or being thereon, and, if he neglects to do so, he takes the risk of trespass by animals lawfully running at large. Such stock were not rightfully upon such uninclosed land in the sense that the owner had the right to run and graze them there, for, if they were, then the landowner would have no lawful right to exclude or remove them therefrom. On the other hand, as a general rule, the owner of uninclosed lands is under no duty to make or keep them in safe condition for stock straying thereon.

140 P. at 833 (emphasis added). In *Gillespie,* this court clarified that the open range doctrine was not based solely on immunity from damages due to trespass but, more importantly, was founded on the absence of a duty.

[¶ 18] The absence-of-duty concept was reiterated four years later in *Garretson,* 176 P. at 434. In that case, Mr. Garretson's cow broke into Mr. Avery's fenced enclosure, ate the green alfalfa grass being grown there, and died.[7] Mr. Garretson sued Mr. Avery for the value of the cow, interest, and costs alleging Mr. Avery was negligent in failing to maintain a lawful fence or in maintaining a fence in such defective condition that it allowed the cow to breach into the alfalfa field. The court noted, if there were no fence at all, Mr. Avery would not be liable because he had no duty to fence against livestock. The court concluded the lawful fence statute was intended to prevent harm to livestock caused by a poorly constructed fence and not from the hazards that might exist within a fenced enclosure once breached.

[¶ 19] In 1919, one year after the *Garretson* decision, the legislature enacted a statute entitled "Domestic Stock Shall Not Be Allowed to Run at Large in Lanes" (Strays in Public Lanes Statute),[8] the precursor to Wyo. Stat. Ann. § 11–24–108 (LexisNexis 2001) (Strays on Fenced Highways Statute) which is at issue in this case. 1919 Wyo. Sess. Laws ch. 109, §§ 1, 2. Turning any domestic stock, saddle, or work horses on any public lanes and fenced roads to graze from May through September was made a misdemeanor punishable by a fine of not less than ten dollars nor more than twenty-five dollars. With the passage of the Strays in Public Lanes Statute, the legislature for the first time addressed and modified the common-law "running at large" rule,[9] which pro-

---

7. As set out in the facts portion of *Garretson,* green alfalfa grass is apparently toxic to cattle accustomed to eating "dry feed," causing them to bloat and then die.

8.

 **Domestic Stock Shall Not Be Allowed to Run at Large in Lanes.**
 AN ACT making it unlawful for any person, persons, company or corporation to turn domestic stock, saddle or work horses in public lanes or fenced roads for grazing purposes.
 *Be It Enacted by the Legislature of the State of Wyoming.*
 **Section 1.** It shall be unlawful for any person, persons, company or corporation to turn any domestic stock, saddle, or work horses in any public lanes or fenced road in the State of Wyoming for grazing purposes, during the months of May, June, July, August and September.

 **Section 2.** Any person, persons, company or corporation violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than twenty-five dollars ($25.00).
 **Section 3.** This Act shall take effect and be in force from and after its passage.
 Approved February 25, 1919.
 1919 Wyo. Sess. Laws ch. 109.

9.

 [T]he owner of domestic animals is under no legal obligation to restrain them from being loose or unattended on a highway absent a statute to the contrary. *Pennyan v. Alexander,* 229 Miss. 704, 91 So.2d 728, 59 A.L.R.2d 1321 (1957); *Hinkle v. Siltamaki,* 361 P.2d 37 (Wyo. 1961); *Alioto v. Denisiuk,* 23 Misc.2d 292, 205 N.Y.S.2d 570 (1960); *Wilson v. Rule,* 169 Kan. 296, 219 P.2d 690 (1950); *cf., Green v. Biles–*

vided an owner of domestic animals is under no legal obligation to restrain them from being loose or unattended on a highway. *Brauner v. Peterson,* 16 Wash.App. 531, 557 P.2d 359, 361 (1976).

[¶ 20] The 1919 Strays in Public Lanes Statute did not wholly repeal the common-law rule. It modified the rule to make turning domestic stock on public lanes and fenced roads, under specific circumstances, a misdemeanor punishable by a fine. Two years later, the statute title was revised to "Live Stock in Lanes," and the language was amended in pertinent part as follows: [10]

Section 3119. It shall be unlawful for any person, persons, company or corporation to permit live stock of any kind, to run at large in any public lanes or fenced roads in the State of Wyoming. Any person, persons, company or corporation violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10.00) *nor more than one hundred dollars ($100.00) and in addition shall pay all damage done by such stock unlawfully permitted to run at large* in such lanes or roads; Provided that *the provisions of this act shall not apply to range stock drifting into lanes or fenced roads in going to, or returning from their accustomed ranges.*

*Coleman Lbr. Co.,* 58 Wash.2d 307, 308, 362 P.2d 593 (1961); *Burback v. Bucher,* 56 Wash.2d 875, 879, 355 P.2d 981 (1960). *Brauner v. Peterson,* 16 Wash.App. 531, 557 P.2d 359, 361 (1976).

10.

### Live Stock in Lanes.

An Act to amend and re-enact Section 3119 Wyoming Compiled Statutes, 1920, relating to stock at large in lanes and providing penalty therefore.

*Be It Enacted by the Legislature of the State of Wyoming:*

Section 1. Section 3119 Wyoming Compiled Statutes 1920, is hereby re-enacted to read as follows:

Section 3119. It shall be unlawful for any person, persons, company or corporation to permit live stock of any kind, to run at large in any public lanes or fenced roads in the State of Wyoming. Any person, persons, company or corporation violating the provisions of this section shall be deemed guilty of a misdemeanor

1921 Wyo. Sess. Laws ch. 108, § 1 (emphasis added). These significant changes removed the May through September application of the previous statute, considerably increased the maximum imposable fine, provided an exception for stock "drifting" into the public lanes or fenced roads going to or coming back from their accustomed ranges, and, perhaps most importantly, provided for civil liability for any damage caused by the livestock unlawfully running at large on public lanes or fenced roads. At this juncture, the legislature had for a second time modified common law and the open range doctrine to impose full liability for damage done by livestock running at large under statutorily specified circumstances.[11] Obviously the drifting livestock exception was something of a cavernous loophole, yet the modifications evidenced the legislature's measured refinements of the open range doctrine.

Another amendment significant to this appeal was enacted in 1955. The language "any public lanes or fenced road," [12] established in the 1919 original enactment of the statute, was revised to "any fenced public lanes or fenced roads." 1955 Wyo. Sess. Laws ch. 15, § 1. Prior to this change, the statute prohibited livestock from running at large on any public lane, whether fenced or unfenced. The statute narrowed the prohibition to livestock running at large on any

and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than one hundred dollars ($100.00) and in addition shall pay all damage done by such stock unlawfully permitted to run at large in such lanes or roads; Provided that the provisions of this act shall not apply to range stock drifting into lanes or fenced roads in going to, or returning from their accustomed ranges.

Section 2. This act shall take effect and be in force from and after its passage.

Approved February 21, 1921.

1921 Wyo. Sess. Laws ch. 108.

11. Amendments made in 1951 gave certain public officials authority to impound animals found straying on public lanes and fenced roads, identify owners, sell impounded animals, and disburse sale proceeds.

12. The 1919 version actually read "in any public lanes or fenced road," and the 1921 amendment changed the "fenced road" reference to the plural "fenced roads."

*fenced* public lane. This development is interesting in light of the then contemporary legal trend toward greater restriction of animals running at large as evidenced in the following American Law Reports excerpt dating from 1954: "The manifest danger to travelers of permitting domestic animals to roam at will on the highways has given rise in many jurisdictions to the adoption of statutes or ordinances prohibiting their owners from allowing them to be at large." M.O. Regensteiner, Annotation, *Owner's liability, under legislation forbidding domestic animals to run at large on highways, as dependent on negligence*, 34 A.L.R.2d 1285, 1285 (1954).[13]

[¶ 22] At first glance, it would seem the Wyoming legislature was bucking the tide of conventional wisdom. However, on closer examination, it appears that the modification to the Strays in Fenced Public Lanes Statute was consistent with the trend for greater restrictions when viewed in the context of extant legislation and the enactment of the livestock district statutes in the same year.

> "All statutes are presumed to be enacted by the legislature with full knowledge of the existing state of law with reference thereto and statutes are therefore to be construed in harmony with the existing law, and as a part of an overall and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to the decisions of the courts."

*Fosler v. Collins*, 13 P.3d 686, 689 (Wyo.2000) (quoting *Voss v. Ralston*, 550 P.2d 481, 486 (Wyo.1976)).

[¶ 23] A statute enacted in 1907 gave boards of county commissioners authority to erect lawful fences upon the right-of-ways of roads, with the costs apportioned between the benefiting landowner, petitioners, or the county as determined to be appropriate, with gates to be constructed as deemed necessary for the convenience of the public. 1907 Wyo. Sess. Laws ch. 39, § 1. This provision (County Commissioners Fence Authorization Stat-

ute) was the predecessor of what we now know as Wyo. Stat. Ann. § 11–28–105 (Lexis-Nexis 2001). It has been retained essentially intact with minor amendments in 1929, 1931, and 1978 which added (1) the term "cattle guards," (2) provisions for identifying signs to be placed on the cattle guards and gates, and (3) direction that construction be done as prescribed by the state highway department. The statute gave county commissioners control and authority to make fencing decisions concerning roads in their county. Clearly, when the 1955 amendment created the Strays in Fenced Public Lanes Statute, the legislature was aware of the County Commissioners Fence Authorization Statute and the boards of county commissioners' longstanding authority to fence any public road in their counties as they deemed appropriate. Subsequent to the 1955 amendment creating the Strays in Fenced Public Lanes Statute, a county's action to fence a lane or road brought with it the prohibition against animals running at large and accorded full liability for damage caused due to a violation.

[¶ 24] In addition, in 1955 the legislature enacted the state's first livestock district legislation (Livestock District Statutes). 1955 Wyo. Sess. Laws ch. 104, §§ 1–9. These provisions, now found at Wyo. Stat. Ann. §§ 11–33–101 to–109 (LexisNexis 2001), permitted seventy-five percent of the landowners owning at least seventy-five percent of the land in any irrigation district to petition the board of county commissioners to establish a livestock district. When such a district was established, livestock was prohibited from running at large within the boundaries of the district including the public highways situated therein. The Livestock District Statutes, like the Fence Out Statute, made any violation a misdemeanor and imposed liability on a livestock owner for all damages occasioned by such violation. Wyo. Stat. §§ 11–606,–607 (Michie 1957).

The owner of animals permitted or allowed to run at large, or herded in violation of any order made in accordance with the provisions of section 4 [§ 11–603],

---

**13.** *See also* Rigelhaupt, *supra*, 29 A.L.R.4th at 439; R.P.D., Annotation, *Liability for damage to vehicle or injury to person riding therein by ani-* *mal at large in street or highway,* 140 A.L.R. 742, 743 (1942).

*shall be liable to any person who shall suffer damage from the depredations or trespasses of such animals, without regard to the condition of his fence;* and the person so damaged shall have a lien upon said animals for the amount of damage done, and the cost of the proceedings to recover the same, and may take the animals into custody until all such damages are paid; provided, that the person so taking said animals into custody shall not have the right to retain the same for more than five days without commencing an action against the owner thereof for such damages.

Section 11–607 (emphasis added); *see also* §§ 11–33–107, –108. Once again, the legislature granted counties local control and authority to make these designations. These statutes have also stood the test of time as the legislature has declined to significantly amend them in the intervening forty-five plus years.

[¶ 25] In 1975, the legislature again amended the Strays in Fenced Public Lanes Statute and clarified the application of its running-at-large prohibition. The amendment, to the extent it is pertinent to this discussion, modified the language from "any fenced public lanes or fenced roads" to "any fenced public highways in the state of Wyoming as defined in W.S. 31–12" (Strays in Fenced Public Highways Statute). 1975 Wyo. Sess. Laws ch. 68, § 1. Wyo. Stat. § 31–12(k) (Michie Supp.1975) provided essentially a laundry list of roads or thoroughfares which were contained in the term "public highways." [14] The last amendment, relevant to this discussion, was made in 1984 when the defining provision for the term "public highways" was repealed and recreated as Wyo. Stat. Ann. § 31–1–101 (Michie 1984). This amendment eliminated the laundry list and defined "public highway" as "the entire width between the boundary lines of every way publicly maintained or if not pub-

licly maintained, dedicated to public use when any part is open to the use of the public for purposes of vehicular travel." 1984 Wyo. Sess. Laws ch. 47, § 3.

[¶ 26] The foregoing review discloses that by 1984 the Strays in Fenced Public Highways Statute had developed into a prohibition against livestock running at large on any fenced public highway, which meant any fenced way used, even if only in part, by the public for vehicular travel. Boards of county commissioners could fence any public way deemed appropriate and bring the road within the broad definition of a "fenced public highway," consequently restricting livestock from running at large. They could also, upon petition by the appropriate configuration of landowners, establish livestock districts and in this manner limit livestock running at large. In short, since 1984 there have been three separate statutes on the books which have impacted the common-law rules governing livestock running at large and imposed full liability for all damage, not just property damage, caused by violating livestock in specifically defined locations.[15]

[¶ 27] The legislature established a statutory scheme to regulate livestock at large as it has deemed necessary and appropriate to the interests of the state and its citizens. However, in this process the legislature did not address the livestock owner's duty of care to protect motorists from his livestock grazing in the vicinity of an unfenced highway. The accident in this appeal occurred on an unfenced public highway. Consequently, the statutes provide the plaintiffs no basis for a claim. Likewise, since Wyoming's common law has heretofore recognized livestock owner liability only when the stock breaches a lawful fence, the plaintiffs ask this court to impose a duty not provided by statute or explicitly recognized in case law.

---

**14.** " 'Public highways' shall include all public highways, county roads, state highways or roads, public streets, avenues or alleys, bridges, subways and viaducts, whether public or private, designed, intended or used for the passage of vehicles, in any county, city, town or other legal subdivision of the State of Wyoming." Section 31–12(k).

**15.** These are the Fence Out Statute (§ 11–28–108), the Strays on Fenced Highways Statute (§ 11–24–108 as defined by § 31–1–101(a)(viii)), and the Livestock District Statutes (§§ 11–33–101 to 109).

[¶ 28] However, also relevant to this discussion, the legislature has not provided the livestock owner with a blanket shield from any claims of negligence. For example, no statutes modify the common-law general duty of reasonable care as it pertains to open range pasturing of livestock. Similarly, the old English common law was not an absolute bar to negligence claims. Furthermore, the legality of a particular practice does not, of itself, provide immunity or absolve a person of the duty to act with reasonable care when engaging in the practice.

[¶ 29] The true issue we must address is not whether there is a duty of reasonable care owed by the rancher to motorists in posted open range, and vice versa. As stated above, the common law of negligence creates a general duty to exercise the degree of care required of a reasonable person in light of all the circumstances. *Hill*, 856 P.2d at 459; *Vassos*, 625 P.2d at 772. The plaintiffs' argument seeks to have this general duty create a question of fact as to whether Two Dot was acting reasonably by allowing its livestock to graze on this highway that night. Two Dot does not deny it is subject to the common-law duty of care under the circumstances but rather argues that duty does not extend to requiring livestock owners to prevent livestock in open range from naturally wandering onto unfenced roads. The Wyoming Stock Growers Association and the Wyoming Wool Growers Association, in their *amicus* brief, also acknowledge there is a limited duty of care on both fenced and unfenced highways but contend the plaintiffs' argument would require livestock owners to fence all roads to avoid negligence claims since that is the only way to prevent the livestock from wandering onto roadways. These arguments frame the genuine, and somewhat narrow, issue in this case: whether the scope of the duty owed by livestock owners to motorists extends to preventing livestock from wandering onto an unfenced roadway in posted open range.

[¶ 30] In addressing this question, it is instructive to examine the case law from other jurisdictions to see how they have dealt with similar concerns. In a factually similar Louisiana case, *Willis v. Cloud*, 758 So.2d 835, 837 (La.Ct.App.), *writ denied*, 760 So.2d 347 (La.2000), an ordinance made all roads in the parish "closed range" and provided, "It shall be unlawful for any person to intentionally or negligently permit any horse, mules, cattle, sheep, goats, or hogs to rove at large." Ms. Willis hit Mr. Cloud's cattle on a road within the parish and subsequently sued for damages. The trial court granted summary judgment to Mr. Cloud, and Ms. Willis appealed. The Louisiana Court of Appeal concluded, on the basis of an exception to the ordinance, the portion of the road where the accident occurred was open range. The court then concluded Mr. Cloud, pasturing his animals in open range, had no duty to keep his cows enclosed and, therefore, incurred no liability for Ms. Willis' personal injuries. 758 So.2d at 837.

[¶ 31] From a footnote in *Willis*, 758 So.2d at 838 n. 11, it appears the court relied on its prior holding in *Harrington v. Upchurch*, 331 So.2d 506 (La.Ct.App.1976). In *Harrington*, another motorist-cow collision case, the court considered a statute which provided, "No person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon the following public highways of this state," followed by a list of the highways covered by the statute. 331 So.2d at 510. The accident did not occur on one of the listed highways, and the area was determined to be open range. The court stated, "Jurisprudence has ... established the rule that in 'open range' areas, i.e., in areas where there is no state statute or local ordinance prohibiting an owner from allowing his animals to roam at large, the owner is under no duty to keep his domestic animals enclosed." *Id.* The court then concluded the legislature had expressly imposed liability only for those damages caused upon the listed highways and had intentionally excluded application of this liability to "open range" highways. *Id.*

[¶ 32] In *Gibbs v. Jackson*, 990 S.W.2d 745 (Tex.1999), a motorist was injured when she hit a horse that was standing on a farm-to-market roadway. Texas historically had been a "free range" state. The injured motorist sued the horse owner for negligently failing to (1) maintain the fence, (2) restrain

the horse, and (3) prevent the horse from roaming unattended onto the road. No state statute or local stock law prohibited the horse from being on this particular stretch of roadway. The Texas Supreme Court declined to impose a new common-law duty. In reaching this decision, the court found it significant that the Texas legislature had often revisited its scheme for determining when restraint should or should not be imposed on livestock owners. 990 S.W.2d at 750. The court reasoned:

> The Legislature has not been oblivious to safety concerns raised by roaming livestock. With its policymaking authority, the Legislature has considered fence and livestock restraint laws for virtually every type of roadway over which it has jurisdiction. It is noteworthy that the Legislature has specifically excluded farm-to-market roads from such regulation. We think it unwise in this instance for the Court to erect barriers that the Legislature has declined to impose.

> Similarly, citizens of Upshur County have, through separate elections, adopted local stock laws in two areas of the county. They have long had the opportunity to adopt a local stock law to prohibit horses from running at large in other parts of the county. Those citizens, who know far more about their roads and livestock than do we, apparently have deemed it unnecessary to adopt such a law for the road adjacent to Gibbs's pasture. We decline in this instance to impose upon them a duty which they have declined to self-impose.

> Accordingly, we hold that Gibbs [the horse owner] had no common-law duty to prevent Tiny [the horse] from roaming onto a farm-to-market road in an area that did not have a local stock law. We reverse the judgment of the court of appeals and render judgment that Jackson take nothing. We hereby disapprove of *Merendino v. Burrell*, 923 S.W.2d 258, 261 (Tex.App.Beaumont 1996, writ denied), and *Miller v. Cozart*, 394 S.W.2d 22, 24 (Tex.Civ.App.Dallas 1965, no writ), to the extent that they hold that a person who

owns or is otherwise responsible for horses has a duty to prevent the horses from roaming onto a farm-to-market road that is free from a local stock law.

*Id.* (footnote omitted).

[¶ 33] The judicial restraint evidenced in these cases is persuasive. In *Gillespie*, 22 Wyo. 331, 140 P. 832, this court held the livestock owner had no duty to keep his animals off unenclosed lands. From 1869 through 1984, the Wyoming legislature enacted and modified three statutes which impose full liability on livestock owners for damage caused when their animals run at large in specified areas. The legislature has refrained from imposing any duty on the livestock owner to keep livestock off unfenced posted open range highways. Likewise, Wyoming's common law does not impose such a duty.

## B. Application of *Hinkle v. Siltamaki*

[¶ 34] The only Wyoming case with somewhat comparable factual circumstances to those in the instant appeal is *Hinkle v. Siltamaki*, 361 P.2d 37 (Wyo.1961), in which a motorist/horse accident occurred on a fenced public highway. Mr. Hinkle, by his own admission, only had evidence of the horse's ownership and presence on the highway as foundation for his negligence claim. The district court granted summary judgment to Mr. Siltamaki concluding:

> "Section 56–1813, Wyoming Compiled Statutes of 1945, as amended, [precursor to § 11–24–108, Strays in Fenced Public Highways Statute] does not impose a liability upon the owner of livestock for livestock turned loose upon the open range which stray into any fenced public lanes or fenced roads in the State of Wyoming without the knowledge of the owners thereof[.]"

*Hinkle*, 361 P.2d at 38. This court, affirming the summary judgment, explicitly adopted the majority view that the mere presence of an animal on the highway does not constitute the owner's negligence per se.[16] *See Nylen*

---

**16.** The *Hinkle* court observed that the minority jurisdictions, which held the presence of an animal on a fenced highway constituted negligence

per se, also had laws requiring livestock owners to provide fences to keep the animals on their property. 361 P.2d at 41.

*v. Dayton,* 770 P.2d 1112 (Wyo.1989). If such evidence is insufficient to constitute a violation of the Strays in Fenced Public Highways Statute and to establish negligence per se on a fenced road, it is also insufficient to establish negligence per se on a posted open range highway.

### C. *Larson–Murphy v. Steiner* Distinguished

[¶ 35] The plaintiffs rely heavily on *Larson–Murphy v. Steiner,* 303 Mont. 96, 15 P.3d 1205 (2000), a plurality decision which reversed years of Montana case law precedent to the effect that the open range doctrine relieved livestock owners of a duty to keep their livestock from wandering onto the roadways. The court concluded the open range doctrine was intended to preclude liability for property damage occasioned by trespassing livestock. This led the court to the further conclusion that, even if livestock owners are not under a duty to maintain a legal fence, they still have a common-law duty to exercise control of their livestock to a particular standard of conduct in order to protect motorists, as foreseeable plaintiffs, against unreasonable risks of harm under the circumstances whether within a herd district or on open range. *Larson–Murphy,* 15 P.3d at 1228. This case can be distinguished on both its facts and the Montana statutes applied.

[¶ 36] In the first place, the accident occurred within a herd district.[17] The Steiners' black Angus bull escaped at night from two fenced enclosures and ended up on a two-lane paved highway, within a herd district, where it was hit by a car driven by Ms. Larson Murphy. The case did not involve application of the open range doctrine to a collision with livestock on a posted open range highway.

[¶ 37] Further, the Montana statutes on herd districts (Mont.Code Ann. §§ 81–4–301 to 310), animals unlawfully running at large (Mont.Code Ann. §§ 81–4–201 to 220), and grazing of livestock on highways (Mont.Code Ann. §§ 60–7–201 to 205) address only willful

acts and fail to explicitly consider an inadvertent or accidental escape of animals from the owner's premises. The statutes also fail to provide liability for all damages incurred and therefore imply, particularly in regard to the herd district and "at large" provisions, that damages are related only to property damage occasioned by the trespass.

[¶ 38] Conversely, the pertinent Wyoming statutes provide much broader liability. The Livestock District Statutes provide in pertinent part: "The owner of animals permitted or allowed to run at large ... is liable to any person who suffers damage from the depredations or trespasses of the animals." Wyo. Stat. Ann. § 11–33–108 (LexisNexis 2001). The Fences and Cattle Guards Statute sets out in relevant part: "Any person owning or having in his possession ... any livestock ... which breaches into any lawful enclosure belonging to someone other than the owner of the animal, is liable to the party sustaining the injury for all damages sustained by reason of such breaching." Wyo. Stat. Ann. § 11–28–108(a) (LexisNexis 2001). And the Strays in Fenced Public Highways Statute provides no owner shall permit livestock to run at large in fenced public highways and deems the owner has permitted picketed animals which escape to run at large. It sets out fines and also requires payment for all damage done by the livestock. Wyo. Stat. Ann. § 11–24–108 (LexisNexis 2001). Hence, each of the Wyoming provisions requires payment of all damages incurred due to violation of the statutes, and they are not limited to only property damage caused by trespass as the Montana statutes provided at the time *Larson–Murphy* was decided.

[¶ 39] The persuasive value of the *Larson–Murphy* case is also undermined by Justice Gray's highly critical dissenting opinion by which she chastises her brethren for overreaching the court's authority and undermining the Montana legislature's lawmaking authority. We agree with the *Larson Murphy* court that there is a general duty of reasonable care owed by the livestock owner

---

**17.** The Montana herd districts are very similar in creation and purpose to Wyoming's Livestock District Statutes.

and the motorist alike. However, that duty does not require a livestock owner to prevent livestock from wandering onto public highways in posted open range.

[¶ 40] The plaintiffs also rely on *Shively v. Dye Creek Cattle Co.*, 29 Cal.App.4th 1620, 35 Cal.Rptr.2d 238 (1994), *Grubb v. Wolfe*, 75 N.M. 601, 408 P.2d 756 (1965), and *Carrow Company*, 167 Ariz. 18, 804 P.2d 747, to demonstrate some other states have suggested livestock owners have a duty to keep their animals off public highways in open range. The reasoning in these cases is inconsistent with Wyoming's common law and statutory framework.

[¶ 41] The *Shively* case, out of California, involved another motorist/black Angus bull collision in open range. The California Court of Appeals relied in part on its precedent established in *Jackson v. Hardy*, 70 Cal. App.2d 6, 160 P.2d 161, 165 (1945), that suggests a cattle owner can be considered negligent if he fails to keep his cattle from straying upon an unfenced highway in open range. It is difficult to reconcile this standard with our Wyoming precedent. *See Hinkle*, 361 P.2d 37.

[¶ 42] In *Grubb*, a motorist hit a calf on a posted open range road in a forest area permitted for grazing. The New Mexico Supreme Court relied on the California court's reasoning in the *Jackson* case. As noted above, that standard implies a lack of such care merely because the calf was on the road in posted open range which is in direct conflict with our state's law.

[¶ 43] The Arizona Supreme Court supported its decision in *Carrow Company* by reasoning:

We need not decide whether the early English common law governed the situation presented in this case, but we suspect that any such rule would not be particularly persuasive in light of the vastly different conditions existing in modern Arizona. "Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs." *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983), quoting Douglas, *Stare Decisis*, 49 Colum.L.Rev. 735, 736 (1949). As mandated by our legislature,

we define and apply the common law to be "consistent with and adapted to the natural and physical conditions of our state."

804 P.2d at 752. Given the thorough treatment of the issue by our statutes and the relatively small number of automobile/livestock collisions in open range, we see no reason to modify or expand existing Wyoming common law.

### D. *Gates v. Richardson* Policy Factors Analysis

 [¶ 44] In order to conclude the scope of the duty requires livestock owners to do anything to prevent livestock from wandering onto highways in posted open range, this court must consider the factors adopted in *Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986), and conclude a plaintiff's interests are entitled to legal protection against a defendant's otherwise legal conduct. The plaintiffs' argument that this court should establish a more expansive duty does not survive this analysis. " '[D]uty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Gates*, 719 P.2d at 195; *see also* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54 at 357–58 (5th ed.1984).

When this Court has considered whether a duty should be imposed based on a particular relationship, we have balanced numerous factors to aid in that determination: "(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved." *Ortega v. Flaim*, 902 P.2d 199, 203, 206 (Wyo.1995) (quoting *Mostert v. CBL & Associates*, 741 P.2d 1090, 1094 (Wyo.1987), *citing to Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986), *quoting Tarasoff v. Regents of Uni-*

*versity of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)). *Duncan v. Afton, Inc.,* 991 P.2d 739, 744 (Wyo.1999) (footnote omitted). Those factors, evaluated under the facts of this case as follows, do not support a new duty to prevent livestock from wandering onto unfenced roads in posted open range:

(a) A livestock owner, though not constantly supervising his animals, may arguably foresee people could drive their cars in such fashion so as to collide with livestock on posted open range roads. However, the motorists on a posted open range highway, being forewarned, have greater capacity to foresee the potential danger by viewing the road at the exact time in question, to make affirmative choices whether to travel the road despite its open range status, to choose the time of day they will be on the road, and to determine the speed and manner of the operation of their vehicles. In this case, the road was marked by open range signs, and the passenger testified that she and the driver had seen those signs. Even so, the plaintiffs argue something more should have been done to alert the drivers that cattle were on the road at the precise time of the accidents, such as flashing lights activated when cattle were present. However, given the wandering nature of livestock, such additional precautions would accomplish no more than the posted signs indicating open range. Cattle naturally grazing in open range pose no greater risk of harm to motorists than indigenous wildlife, such as antelope or deer, which might by happenstance be grazing in the vicinity of the same road. Because motorists were advised in advance that cattle could likely be on and around this stretch of road, the cattle actually presented less of a danger than naturally roaming wildlife. The fact that the cattle were of the black Angus breed would admittedly make them difficult to see on a dark night. However, this circumstance by itself is insufficient to justify imposition of a greater duty on black Angus owners to prevent their cattle from wandering onto roadways in posted open range.

(b) There is little connection between Two Dot's conduct grazing cattle in a large area known to be posted open range and the injury suffered. There was no other "conduct" on the part of Two Dot. No one alleged Two Dot drove the cattle onto the roadway in front of moving vehicles or took any action to encourage the cattle to be on the road surface. The plaintiffs have asserted the cattle were on BLM land that, although leased and grazed in the past by Two Dot, at the time of the accident was in a period of rest and contend this "conduct" occasioned the fatal accident. This argument is a red herring. The question of whether Two Dot was trespassing on BLM land is solely an issue between the BLM and Two Dot. The plaintiffs provided no evidence any of the drivers or other plaintiffs acted either upon knowledge of lease arrangements or on the fact the BLM intended to keep this pasture in a resting state. The area in question was land upon which cattle, by custom, license, lease, or permit, were grazed or permitted to roam. *Hubbard v. Howard,* 758 F.Supp. 594, 596 (D.Idaho 1990), *aff'd,* 927 F.2d 609 (9th Cir.1991); *Greer v. Ellsworth,* 113 Idaho 979, 751 P.2d 675 (Ct. App.1988). The plaintiffs also contend that, once notified by the BLM that the cattle had entered the open range despite the BLM's grazing restrictions in effect at the time, Two Dot had a duty to the traveling public to remove the cattle promptly. Again, the plaintiffs confuse the issue of a possible trespass, a matter between only the BLM and Two Dot, with an alleged tort duty to prevent the livestock from wandering onto an unfenced roadway in open range. Given there was no duty to keep livestock off the unfenced roadway in the first place, Two Dot had no obligation to the plaintiffs to remove the cattle from the open range. The simple exercise of the right to pasture cattle on open range does not constitute the kind of "conduct" necessary to invoke, for policy reasons, an expanded duty of care essentially nullifying the intended purpose and benefits of the open range doctrine.

(c) There can be no doubt as to the degree of certainty the plaintiffs suffered

injury. Tragically, two people were killed, and two others were injured.

(d) No moral blame can be attached to Two Dot's conduct. Two Dot was merely pasturing its cattle in open range, no more no less, and this carries with it no negative moral connotation of any kind.

(e) Preventing future harm can only be fully assured through physically restraining livestock from wandering across roads by fencing them. Imposing such a broad duty, essentially nullifying the open range doctrine, is not prudent absent legislative participation and direction. The boards of county commissioners and local landowners, who are most attuned to the potential danger presented by a posted open range road in their locale, have had the statutory authority since at least 1984 to regulate livestock running at large in their counties. An expansive remedy, if one is truly required, has been available for a long time.

(f) The burden that would be placed on Two Dot by the creation of a broadened duty is substantial. Livestock owners would no longer be able to graze their livestock without being exposed to liability based on the limited intellect and behavioral vagaries of the animals they raise. Absent construction of hundreds of miles of expensive fencing, the livestock industry would be exposed to a large and unpredictable risk.

(g) The consequences to the community from the danger of collisions with livestock on open range are no greater than have existed over the past many decades of high speed motorized travel. It is significant that this is the first case of its kind to be considered by this court despite the state's longstanding open range doctrine and the increase in motor vehicle travel over the years. Statistically, motorist/cow collisions resulting in injuries are not significant in number or percentage of all motorist collisions resulting in injuries. By way of example, in 1999 there were 4,071 motor vehicle accidents resulting in injury and only thirty-seven of these involved a motorist/cow collision. It cannot be discerned from the report how many of these occurred on fenced highways as opposed to posted open range. Wyoming's Comprehensive Report on Traffic Crashes at 14 (1999). We can safely assume the number of posted open range accidents was less than the total number of thirty-seven. Obviously, in the context of all motor vehicle accidents resulting in injuries, motorist/livestock accidents on posted open range do not present a large or extraordinary risk. On the other hand, the consequences to the community from imposition of an expanded duty could be very great. Such a duty could conceivably eliminate the open range as it has been known in Wyoming since the territorial days and impose additional obstacles to migrating wildlife. It would also extinguish local assessment and control of the open range and roadways as superfluous functions.

(h) Based on the number of motorist/cow collisions resulting in injury, discussed above, we can anticipate that the consequence to our court system would not be onerous or extreme.

(i) The final policy consideration is whether there is insurance available, prevalent, and at an affordable cost. This requires a high degree of speculation. It is most likely available to ranchers. For a price, insurance can be obtained to cover almost any imaginable risk. Is it prevalent? Probably not given Wyoming has been long known as a "fence out" state and the cost is likely high because of the unpredictable nature of the risk. No doubt the total economic costs of imposition of an expanded duty, including both insurance and fencing or other livestock management techniques, would likely have a negative impact on the livestock industry. It is also relevant that affordable insurance, which spreads the risk among a much broader participant pool, has been available to motorists for a long time.

[¶ 45] We have recognized there is a reciprocal and general duty of care owed by livestock owners pasturing animals in posted open range and motorists driving on unfenced highways passing through the open range area. Consistent with our review of the open range doctrine, the applicable statutes, the case law, and the *Gates* factors, that

duty does not require a livestock owner to prevent livestock from wandering onto public highways so long as the area is posted as open range. That is all the plaintiffs alleged was done by Two Dot in this case. Furthermore, Two Dot owed no duty to the plaintiffs to remove the livestock when notified by the BLM they were in the pasture despite the grazing restriction. While circumstances could arise where other actions of a livestock owner on open range, beyond allowing livestock to wander onto a public roadway, could be considered unreasonable, we will not attempt to identify such circumstances until they are presented to us. We affirm the district court's order granting summary judgment in favor of Two Dot.

### *Maria Hernandez*

[¶ 46] The plaintiffs challenge the district court's decision granting Ms. Hernandez's motion for summary judgment. Ms. Hernandez was the driver of the second vehicle that struck the cow, doing so immediately prior to the third vehicle. The basis of the plaintiffs' claim is that, after colliding with the cow, Ms. Hernandez sent her young son back along the road towards where the cow had been to warn oncoming traffic. The plaintiffs contend, as the third vehicle approached the scene, the young child—Anthony—was in its lane of travel and, in order to avoid the boy, the vehicle moved into the other lane whereupon it collided with the cow. In opposition to the motion, the plaintiffs relied on the passenger's testimony that Anthony was in the third vehicle's lane of travel. In addition, the plaintiffs point to physical measurements taken at the scene indicating that their version of the events was possible. Ms. Hernandez countered with her own testimony that she did not send her son back to warn other travelers but, rather, Anthony and all her passengers were still in her vehicle when the third accident occurred. The district court ruled in favor of Ms. Hernandez and granted the motion. The district court reasoned:

> And I don't think that there's sufficient evidence in the record that a jury could reasonably conclude that he was in a position situated in relationship to the cow where his position would have been unrea-

> sonable in any respect. I don't think there's any evidence from which they can find exactly where he was in relation to the cow.

> The evidence indicates that Yates [driver of third car] swerved and hit the cow, but that still doesn't get us there, because we still don't know if he was farther-if he was east of the cow or if he was north of the cow. It's still a toss-up as to whether he was in the lane or at the side. And it's a toss-up as to exactly where the cow was, whether it was in the middle of the road or where.

> Considering what evidence there is, why—and knowing the location—the one thing, actually, that we do know here is the location of the Hernandez vehicle. And if Yates [driver of third car] had stayed in the eastbound lane of traffic and veered to the right to avoid the cow, why, that would have increased the danger of a collision with the Hernandez vehicle, which was ahead of him and on his side of the road.

> So I can't say, considering all of that, that there is evidence from which a jury could reasonably conclude that the-any actions that were taken were unreasonable.

[¶ 47] A person who voluntarily undertakes to render a service to another which he recognizes as necessary for the protection of a third person or his property is subject to liability to that person for physical harm resulting from the failure to exercise reasonable care if that failure increases the risk of harm to the third person or the harm was occasioned by reliance on the voluntary service. *Kelly v. Roussalis*, 776 P.2d 1016, 1019 (Wyo.1989); *Beard v. Brown*, 616 P.2d 726, 731–34 (Wyo.1980); *Ellsworth Brothers, Inc. v. Crook*, 406 P.2d 520, 524 (Wyo.1965); Restatement (Second) of Torts § 323 (1965 & Supp.1999). In order to hold Ms. Hernandez liable for injuries suffered, the plaintiffs must demonstrate that: (1) Ms. Hernandez voluntarily undertook to render a service she recognized as necessary for the protection of the third vehicle and its occupants; (2) she failed to exercise reasonable care in performing the service; and (3) failure to exercise reasonable care increased the risk of harm to the occupants of the third vehicle *or* the occu-

pants' injuries resulted from the reliance of the driver of the third vehicle on Ms. Hernandez's actions. The district court's decision related to the second element: There was insufficient evidence upon which a jury could conclude Ms. Hernandez acted with unreasonable care.

[¶ 48] We must disagree with the district court's decision. Our examination of the record discloses disputed material facts which, when viewed in the light most favorable to the plaintiffs' position, counsel against summary judgment and support sending the matter to a jury. First, there is eyewitness testimony that Anthony was in the third vehicle's lane of travel and, immediately after the vehicle moved into the other lane to avoid the child, the collision with the cow occurred. Furthermore, the notes taken by the investigating officer at the scene of the accident indicate the plaintiffs' version of the events is, at least, physically possible. This is sufficient evidence to raise a question for the jury as to whether or not Ms. Hernandez acted reasonably in attempting to warn the third vehicle's occupants. The district court's decision implicitly acknowledges this when it states that certain facts are a "toss-up." It is when such questions are a toss-up that a jury trial is most appropriate. Whether or not Ms. Hernandez did, in fact, act unreasonably or whether her actions were the proximate cause of the injuries to the occupants of the third vehicle is a matter for a jury to determine. Therefore, we reverse the district court's order granting summary judgment in favor of Ms. Hernandez.

[¶ 49] Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.